FILED
United States Court of Appeals
Tenth Circuit

June 22, 2021

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON ALEXANDER BROADWAY,

Defendant - Appellant.

No. 20-1034

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:07-CR-00517-LTB-1)

---

Meredith B. Esser, Assistant Federal Pubic Defender (Virginia L. Grady, Federal Pubic Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

Marissa R. Miller Assistant United States Attorney (Jason R. Dunn, United States Attorney, with her on the brief), Office of the United States Attorney, Denver, Colorado, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

This case is one of many applying the provisions of the First Step Act, Congress's attempt to reduce disparities in sentencing for certain drug crimes. Prior to the Act, defendants convicted of crimes involving crack cocaine faced much higher penalties than defendants convicted of powder cocaine offenses. This disparity was partially addressed in 2010 by the Fair Sentencing Act, but it remained for crack cocaine defendants sentenced before the Fair Sentencing Act. Enter § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222: it opened the courtroom doors to these defendants to move for discretionary sentence reductions based on the retroactive application of the Fair Sentencing Act. Although the remedial purpose of § 404 is clear, its language has not been interpreted uniformly. Because application of § 404(b) should not vary from defendant to defendant, we conclude that before a district court exercises its discretion, it should look to the drug quantity and Sentencing Guidelines associated with an eligible defendant's offense of conviction, rather than his underlying conduct, to "impose a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."

The district court did not do so here, so we reverse.

# I. Background

### A. Broadway's Crime, Plea, and Sentence

In 2007, police found 487.82 grams of crack cocaine in Broadway's apartment, along with drug packaging materials, a digital scale, and a gun. The government charged Broadway with possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).[1] Although he possessed far more than 50 grams of crack cocaine, at the time, 50 grams was sufficient to trigger the highest statutory penalty available under 21 U.S.C. § 841(b)(1).

Broadway decided to enter a plea agreement with the government. In exchange for Broadway's guilty plea, the government agreed to recommend a sentence at the bottom of his guidelines range. Within the plea agreement, Broadway stipulated to possessing 487.82 grams of crack cocaine.

At sentencing, the district court adopted the unobjected-to factual statements in the Presentence Investigation Report, which included Broadway's responsibility for the stipulated amount of crack cocaine. The district court then calculated Broadway's guidelines range to be 262 to 327 months' imprisonment. Although his guidelines offense level without enhancement would have been 31,

---

[1] Broadway was also charged and convicted of being a felon in possession of a firearm, but that charge is not relevant to this appeal.

it was increased to 34 because Broadway was designated as a career offender under USSG § 4B1.1,[2] and accordingly, his base offense level was determined by the statutory maximum penalty for his offense. The district court imposed a sentence at the bottom of Broadway's guidelines range: 262 months' imprisonment.

## B. Evolving Crack Cocaine Punishment

The punishment associated with crack cocaine has changed significantly since Broadway's crime and sentencing. *See United States v. Crooks*, 997 F.3d 1273 (10th Cir. 2021). Before Broadway's crime and sentencing, the Anti-Drug Abuse Act of 1986 established tiers of punishment based on the amount of crack cocaine involved in an offense. The Act punished crack cocaine defendants far more severely than powder cocaine defendants, as each gram of crack cocaine was treated as the equivalent of one hundred grams of powder cocaine.

Congress addressed this disparity in 2010 by enacting the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, which modified 21 U.S.C. § 841(b)(1)(A) by raising the crack cocaine quantity threshold for the highest statutory penalty (10 years to life imprisonment) from 50 to 280 grams or more of crack cocaine and by raising the amount of crack cocaine to trigger the intermediate statutory penalty (5- to 40-years' imprisonment) from 5 to 28 grams

---

[2] Broadway had two prior convictions for possession of crack cocaine for sale and the sale/transport of a controlled substance. *See* R., Vol. I at 140.

of crack cocaine.  But the Fair Sentencing Act was not retroactive, so defendants sentenced earlier, like Broadway, could not benefit from it.  *See United States v. Brown*, 974 F.3d 1137, 1142 (10th Cir. 2020) (citing *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012)).

These defendants finally could benefit from the Fair Sentencing Act when Congress enacted the First Step Act in 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222.  The First Step Act made the Fair Sentencing Act's changes to crack cocaine penalties retroactive and allowed prisoners to file motions for sentence reductions directly in federal court.[3]

---

[3]  Section 404 of the First Step Act provides:

a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in

(continued...)

-5-

### C. *Broadway's First Step Act Motion*

Broadway filed a motion for sentence reduction under the First Step Act in 2019. He requested a reduction of his 262-month sentence to a 188-month sentence based on his view of the appropriate guidelines calculation had he been sentenced under the Fair Sentencing Act. In support, Broadway argued the government could not have convicted him under the post-Fair Sentencing Act version of 21 U.S.C. § 841(b)(1)(A)(iii)—which raised the threshold drug quantity from 50 to 280 grams of crack cocaine—but instead, it could only have convicted him of violating the post-Fair Sentencing Act version of § 841(b)(1)(B)(iii)—which applies to 28 to 279 grams of crack cocaine. Under this approach, Broadway's statutory maximum would have been 40 years' imprisonment, not life. Thus, his base offense level under the career offender guideline of USSG § 4B1.1(b) would have been lower, resulting in a lower

---

[3](...continued)
accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.

guidelines range. In addition, Broadway argued the 18 U.S.C. § 3553(a) sentencing factors warranted a reduced sentence based on his good prison record.

The district court denied Broadway's motion. Although it correctly found Broadway was eligible for First Step Act relief under § 404(a) of the First Step Act, *see Crooks*, 997 F.3d 1273 (10th Cir. 2021), it did not find a sentence reduction was warranted. The district court explained that the record established Broadway was responsible for more than 280 grams of crack, so even after the Fair Sentencing Act, the government could have convicted Broadway under § 841(b)(1)(A)(iii). And because the statutory maximum for that subsection is life imprisonment, his guidelines range would have been the same under the career offender guideline. The district court also added that the § 3553(a) factors did not entitle Broadway to a sentence reduction by reiterating its findings from sentencing—such as Broadway's extensive criminal history dating back to age 13, the large quantity of drugs underlying his crime of conviction, and the fact that he had a gun. It also rejected Broadway's insistence that his prison record warranted a reduction. Finally, the district court noted that reducing Broadway's sentence would create unwarranted sentencing disparities.

## II. Analysis

Although the First Step Act vests district courts with nearly unfettered discretion to decide whether to reduce a sentence, district courts are not entirely

left to their own devices.  To engage in the § 404(b) analysis, a district court must first consider the effect of the Fair Sentencing Act on an eligible defendant's sentence if it had been in effect when the defendant committed the crime.  *See* First Step Act § 404(b) (granting district courts discretion to reduce sentences of eligible defendants "as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed").  After it follows this § 404(b) directive, a district court may then exercise its discretion to decide whether to reduce a sentence.

The district court denied First Step Act relief to Broadway.  Applying § 404(b), it reasoned that even if the Fair Sentencing Act were in effect at the time his crime was committed, Broadway's offense of conviction and guidelines range would have been unchanged.  This conclusion was based on Broadway's responsibility for 487.82 grams of crack cocaine.  Because 487.82 triggered 21 U.S.C. § 841(b)(1)(A)(iii) both pre- and post-Fair Sentencing Act, the district court concluded that the Fair Sentencing Act's application changed nothing.[4]

---

[4] The district court found that "[b]ased on the unchanged sentencing guideline range, application of the sentencing factors set forth in 18 U.S.C. § 3553(a)(1)-(7), and Mr. Broadway's claims related to his record while incarcerated, I decline to exercise my discretion to reduce Mr. Broadway['s] term of imprisonment."  R., Vol. I at 155.  Thus, even though the district court had discretion to deny Broadway's motion, it still partially relied on Broadway's unchanged guidelines range in exercising its discretion.  So, notwithstanding the district court's partial reliance on other factors that could have independently justified the district court's decision had it ruled in the alternative, the application

(continued...)

Broadway argues this conclusion was legal error. In his view, the district court erroneously tied a change in the statutory penalty range to his underlying conduct (responsibility for 487.82 grams of crack cocaine) rather than his offense of conviction (50 grams or more of crack cocaine). If the district court had used 50 grams instead of 487.82 grams of crack cocaine to apply the Fair Sentencing Act as if it were in effect at the time the covered offense was committed, Broadway contends his statute of conviction would have been 21 U.S.C. § 841(b)(1)(B)(iii). This subsection post-Fair Sentencing Act applies to 28 to 279 grams of crack cocaine and has a lower statutory penalty range, which would have rendered for Broadway a lower base offense level per the career offender guideline and a lower resulting guidelines range.

To resolve this question, we must determine what it means to "impose a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). We review matters of statutory interpretation, as well as the scope of a district court's authority to reduce a sentence, de novo. *See United States v. Gutierrez*, 859 F.3d 1261, 1265 (10th Cir. 2017); *United States v. Rhodes*, 549 F.3d 833, 837 (10th Cir. 2008).

We begin, as we always do, with the statute's text. *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1143 (10th Cir. 2005), *as corrected* (Oct.

_____

[4](...continued)
of § 404(b) is squarely before this court.

21, 2005).  If the statute's text is unambiguous, then its plain meaning controls, and our inquiry ends.  The plain meaning of a statute "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

We conclude that, prior to exercising its discretion, and consistent with the plain meaning of the statute's text, a district court should look to the minimum drug quantity associated with an eligible defendant's offense of conviction, rather than his underlying conduct, to "impose a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."  First Step Act § 404(b).[5]  This conclusion is not immediately apparent from the express language of the First Step Act, which does not explain how to reduce a sentence "as if the Fair Sentencing Act were in effect."  However, the context surrounding § 404(b) and the broader First Step Act make the meaning of this statutory language clear.

---

[5]  The minimum drug quantity is appropriate because that is the quantity every defendant was indisputably convicted of possessing pre-Fair Sentencing Act.  *See United States v. Jackson*, 964 F.3d 197, 206 (3d. Cir. 2020) (deeming the minimum drug quantity the salient quantity for § 404(b) purposes despite the defendants stipulating to possessing a much larger amount).  For Broadway, who was convicted of violating 21 U.S.C. § 841(b)(1)(A)(iii) for a crime involving 50 grams or more of crack cocaine, the relevant drug quantity for this inquiry is 50 grams.

First, the overarching purpose of the First Step Act is to further the Fair Sentencing Act's objective of remedying the disproportionately harsh sentences imposed for crack cocaine offenses. *See Brown*, 974 F.3d at 1142. This opportunity to seek sentence reductions afforded to eligible crack cocaine defendants reflects Congress's desire to close the crack to powder cocaine disparity gap in favor of crack cocaine defendants. This context highlights the proper way to calculate sentences for covered offenses as if the Fair Sentencing Act were in effect. At bottom, § 404 of the First Step Act aims to reduce some sentences of crack cocaine defendants and favors using the approach that yields greater clemency. The pro-defendant purpose of the First Step Act supports the conclusion that the district court's § 404(b) consideration of the retroactive application of the Fair Sentencing Act should utilize the offense of conviction approach because it requires the sentencing court to start from the correct hypothetical guidelines range.

Second, the offense of conviction approach also makes sense in light of the realities of criminal proceedings under the extant statutory scheme. The convictions of defendants charged with violating § 841(b)(1)(A)(iii) pre-Fair Sentencing Act were premised on at least 50 grams of crack cocaine, not 280. Their indictments charged at least 50 grams of crack cocaine, not 280. And their convictions only required a guilty plea to or proof beyond a reasonable doubt of at

least 50 grams of crack cocaine, not 280.  Thus, to rely on a defendant's underlying conduct involving more than 50 grams of crack cocaine necessarily requires a First Step Act district court to engage in a counterfactual analysis of the course of action in the earlier proceeding.

Consider the district court here.  By relying on Broadway's underlying conduct of possessing 487.82 grams of crack cocaine to apply § 404(b) and concluding his statutory penalty and guidelines range would have been unchanged by the Fair Sentencing Act, the district court necessarily had to consider the following counterfactuals, including whether:

- the government would have charged Broadway with possessing 280 grams or more of crack cocaine;

- the grand jury would have indicted Broadway for possessing 280 grams or more of crack cocaine;

- Broadway would have pleaded guilty or not guilty to possessing 280 grams or more of crack cocaine;

- Broadway would have entered into a plea agreement;

- Broadway would have stipulated to possessing 280 grams or more of crack cocaine in a plea agreement;

- Broadway would have bargained for a lower statutory penalty range based on a lower drug quantity in a plea agreement;

- Broadway would have gone to trial if charged with possessing 280 grams or more of crack cocaine;

-12-

- the government would have been able to prove beyond a reasonable doubt that Broadway possessed 280 grams or more of crack cocaine;

- Broadway would have been convicted by a jury or judge of possessing 280 grams or more of crack cocaine.

To impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the offense was committed is inherently backward looking, but it should not require the amount of speculation necessitated by looking to a defendant's underlying conduct, even if stipulated. Courts are not time machines which can alter the past and see how a case would have played out had the Fair Sentencing Act been in effect. We doubt Congress would have imposed such a futile role for us. We can easily discern, however, whether the Fair Sentencing Act modified a statutory provision, and then match up the offense's minimum drug quantity with the amended statutory provision.

We recognize that defendants like Broadway indisputably possessed more than the higher post-Fair Sentencing Act drug quantity threshold, and likely the only reason the government did not charge them with possession of 280 grams or more of crack cocaine is because at the time, 50 grams or more of crack cocaine warranted the highest statutory penalty. And in cases like this where the defendant stipulated to the fact that he had more than 280 grams of crack cocaine, it is not a stretch to assume that had the Fair Sentencing Act been in effect at the

-13-

time of Broadway's offense conduct, the government would have charged him under the same provision and the prosecution would have played out the same. In such circumstances, looking to a defendant's underlying conduct would probably not be unfair to eligible defendants.

But not all cases are this straightforward, and the First Step Act must apply to all eligible defendants. What if the drug quantity were disputed? For example, the government asserted the defendant possessed 300 grams of crack cocaine, while the defendant asserted it was only 250, but in the plea agreement the parties stipulated that the quantity was 50 grams because that was all the statute required at the time. And what if at sentencing the district court found by a preponderance of the evidence that the drug quantity was 280 grams, and the defendant lacked much of an incentive to dispute this amount (and did not) because, at the time, it would not have affected his guidelines range? Or maybe he did dispute this amount, but the district court overruled his objection. In such a case, we think it would be contrary to the statutory scheme to find that the defendant's sentence would have been unaffected by the Fair Sentencing Act by attributing him with possession of 280 grams of crack cocaine.[6]

---

[6] But again, even after a district court applies § 404(b) looking to the minimum drug quantity associated with a defendant's offense of conviction, it is not required to reduce a sentence based on the facts on the ground. *See* First Step Act § 404(c).

We also recognize that looking to a defendant's offense of conviction rather than his underlying conduct creates potential disparities between defendants convicted of 21 U.S.C. § 841(b)(1)(A)(iii) pre- and post-Fair Sentencing Act. For example, consider two crack cocaine defendants with identical § 841(b)(1)(A)(iii) convictions involving 300 grams of crack cocaine. The first defendant was sentenced post-Fair Sentencing Act, so he is ineligible to seek a sentence reduction per the First Step Act. Moreover, his conviction of (A)(iii) for 280 grams or more of crack cocaine resulted in the highest statutory penalty range of 10 years to life imprisonment. But the second defendant was sentenced pre-Fair Sentencing Act. So, unlike the first defendant, the second defendant is not only eligible for First Step Act relief, but when he seeks a sentence reduction, his statutory penalty range is dictated by (B)(iii) based on the minimum drug quantity associated with his offense of conviction (50 grams).

Congress aimed to eliminate sentencing disparities with the First Step Act, not create more. Even so, although looking to a defendant's offense of conviction rather than his underlying conduct may afford some defendants more opportunities than others, First Step Act sentence reductions are not mandatory—any disparity can be addressed by the district court in its discretion after applying § 404(b). *See* First Step Act § 404(b), (c).

To be sure, by adopting the offense of conviction approach for the application of § 404(b), we do not foreclose a district court's consideration of an eligible defendant's underlying conduct. We have recognized that "the 18 U.S.C. § 3553(a) factors . . . are permissible, although not required, considerations when ruling on a 2018 [First Step Act] motion." *United States v. Mannie*, 971 F.3d 1145, 1158 n.18 (10th Cir. 2020). Some of these factors include "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense"—both of which implicate the actual quantity of drugs involved in the offense. 18 U.S.C. § 3553(a)(1), (2)(A). And the First Step Act merely permits, not mandates, a court to reduce a sentence. *See* First Step Act § 404(b), (c). Thus, even under the offense of conviction approach, where a defendant's crime involved in reality more than 280 grams of crack cocaine, a district court in its discretion can decline to reduce a sentence for that reason. We trust diligent district courts can, consistent with the purposes of the First Step Act and the Fair Sentencing Act, differentiate between those eligible crack cocaine defendants who were punished disproportionately harsher than powder cocaine defendants and those who were not.

For these reasons, the district court should look to the minimum quantity of drugs associated with an eligible defendant's offense of conviction, rather than his underlying conduct, to determine whether the Fair Sentencing Act would have

-16-

affected his sentence had it been in effect at the time of the defendant's crime.[7]

After the district court does so, it may exercise its discretion to determine whether to reduce a sentence, which may include consideration of the § 3553(a) sentencing factors and the defendant's underlying conduct.

In denying Broadway's motion, the district court did not start with the offense of conviction and lowered guidelines range but skipped to his stipulated drug quantities. This was legal error. The district court declined to reduce Broadway's sentence because, based on his underlying conduct of possessing over 280 grams of crack cocaine, it determined that his statutory penalty and guidelines range would have been unaffected by the Fair Sentencing Act. But had the district court started with his offense of conviction, both would have been lowered by the retroactive application of the Fair Sentencing Act.

Although the district court properly applied the § 3553(a) factors, we think the better process is to remand for reconsideration after starting from the correct guidelines range.

---

[7] The drug quantity associated with a defendant's offense of conviction has no effect on the total drug quantity attributed to a defendant for purposes of a defendant's base offense level per the Guidelines. This amount need only be found by a preponderance of the evidence, *see United States v. Pacheco*, 884 F.3d 1031, 1050 (10th Cir. 2018), and has no effect on the statutory penalty range or any resulting guidelines implications tied to the statutory penalty range, like the career offender enhancement here.

## III.  Conclusion

We **REVERSE** the district court's denial of Broadway's First Step Act motion and **REMAND** with instructions to reconsider the motion in light of the above.