**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

MEGA LESTARI SETIYANINGSIH,

  Defendant - Appellant.

No. 21-8093
(D.C. No. 1:19-CR-00198-NDF-1)
(D. Wyo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, **KELLY**, and **ROSSMAN**, Circuit Judges.
_____

Mega Lestari Setiyaningsih, proceeding pro se,[1] appeals the district court's

denial of her motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A),

commonly known as compassionate release. Exercising jurisdiction under 28 U.S.C.

§ 1291, we **AFFIRM**.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Ms. Setiyaningsih proceeds pro se, we liberally construe her briefing. *United States v. Davis*, 339 F.3d 1223, 1225 (10th Cir. 2003).

**BACKGROUND**

In 2020, Ms. Setiyaningsih pleaded guilty in federal district court in Wyoming to Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and Possession of Firearm In Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). The plea agreement was entered under Federal Rule of Criminal Procedure 11(c)(1)(C) and provided that Ms. Setiyaningsih should be sentenced at the applicable mandatory minimums—ten years under § 841(b)(1)(A) and a five-year consecutive sentence under § 924(c)(1). On June 1, 2020, the district court sentenced Ms. Setiyaningsih to 180 months' imprisonment in line with the plea agreement. Her projected release date is August 1, 2032.

In October 2021, Ms. Setiyaningsih filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). She asked the district court to reduce her sentence to time served and to impose a term of supervised release equal to the remainder of her original sentence with a special condition of home confinement. Ms. Setiyaningsih contended her many medical issues—including heart disease, cerebrovascular disease (strokes), and untreated leukemia—and the allegedly "substandard medical care" she was receiving in BOP custody placed her at increased risk for severe illness from COVID-19 and constituted extraordinary and compelling reasons warranting a sentence reduction. R. vol. 2 at 18; *see id.* at 50. She also argued the factors under 18 U.S.C. § 3553(a) supported compassionate release. At the time of

her motion, Ms. Setiyaningsih was incarcerated at the Carswell Federal Medical Center in Fort Worth, Texas.

The government opposed Ms. Setiyaningsih's motion, arguing (1) she failed to establish extraordinary and compelling reasons, and (2) the § 3553(a) factors weighed against a sentence reduction.

Ms. Setiyaningsih's compassionate release motion was denied. The district court assumed in her favor that she could show extraordinary and compelling reasons but ultimately determined the § 3553(a) factors weighed against a sentence reduction. This timely appeal followed.

## DISCUSSION

### I.    Applicable law

A district court may grant a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) if three requirements are met: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).[2] Only the third requirement—the district court's consideration of the § 3553(a) factors—is at issue here.

---

[2] Section 3582(c)(1)(A) also contains an administrative exhaustion requirement. The government conceded administrative exhaustion, and we need not analyze the issue further because § 3582(c)(1)(A)'s exhaustion requirement is non-

"We review a district court's order denying relief on a § 3582(c)(1)(A) motion for abuse of discretion." *Hemmelgarn*, 15 F.4th at 1031. "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *Id.* (citation omitted). "Because the weighing of the § 3553(a) factors is committed to the discretion of the district court, we cannot reverse 'unless we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Hald*, 8 F.4th 932, 949 (10th Cir. 2021) (citation omitted).

## II. The district court did not abuse its discretion by denying Ms. Setiyaningsih's motion for compassionate release.

On appeal, Ms. Setiyaningsih spends much of her briefing contending extraordinary and compelling reasons support her requested sentence reduction. We need not address these arguments, however, because the district court assumed the extraordinary and compelling requirement in Ms. Setiyaningsih's favor and the government does not contest extraordinary and compelling reasons on appeal.

The focus of our analysis is on Ms. Setiyaningsih's challenge to the district court's consideration of the § 3553(a) factors.[3] The district court found none of the applicable

---

jurisdictional. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021).

[3] The government suggests we find Ms. Setiyaningsih waived review of the district court's § 3553(a) analysis. We are not persuaded. In her opening brief, Ms. Setiyaningsih sufficiently challenges the district court's weighing of the § 3553(a) factors. Especially given our liberal construction of pro se briefing, we see no reason to avoid reaching the merits of this appeal.

sentencing factors supported compassionate release. As we explain, the district court did not abuse its discretion.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

Ms. Setiyaningsih first challenges the district court's conclusion that, under § 3553(a)(1), her history and characteristics weighed against a sentence reduction. In denying compassionate release, the district court referenced Ms. Setiyaningsih's "several prior felonies for unlawful use of a credit card, multiple possessions of a controlled substance (marijuana), prostitution, multiple possessions of a dangerous drug (cocaine), and driving under the influence." R. vol. 2 at 537. On appeal, Ms. Setiyaningsih objects to the district court's consideration of her criminal history. *See* Opening Br. at 25 ("[T]hose crimes I had committed in the past I already served my time [for] so why [am I] still being punish[ed] for them . . . ."). If Ms. Setiyaningsih contends the district court could not consider her criminal history, she is wrong. Section 3553(a)(1) expressly instructs a district court to consider "the history . . . of the defendant"—and a defendant's history includes their criminal history. *See United States v. Mannie*, 971 F.3d 1145, 1158 (10th Cir. 2020).

To the extent Ms. Setiyaningsih is arguing the district court should have given more weight to her post-sentencing conduct, we reject this argument. Ms. Setiyaningsih maintains that since she has been serving her custodial sentence, she has made significant efforts towards self-improvement: for example, she has pursued vocational training, drug education, and drug-abuse treatment. Opening Br. at 29. Ms. Setiyaningsih is correct that

district courts generally may consider a defendant's post-sentencing rehabilitation under

§ 3553(a), *see Pepper v. United States*, 562 U.S. 476, 503-04 (2011), but the "weighing

of the § 3553(a) factors is committed to the discretion of the district court," *Hald*, 8 F.4th

at 949. We conclude the district court did not abuse its discretion by finding that, on

balance, Ms. Setiyaningsih's history and characteristics weighed against a sentence

reduction.

  **B.**  **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence**

  Ms. Setiyaningsih next contends the district court placed too much emphasis on

the seriousness of her offense under § 3553(a)(2)(A). Ms. Setiyaningsih does not dispute

that her offenses were serious; rather she appears to contend that the seriousness of her

crimes is not inconsistent with her requested sentence reduction. *See* Opening Br. at 31

("Placing me in home confinement . . . will not suggest to the community that my

offense[s] were not serious."). The district court's conclusion that "[t]he combination of a

firearm and the large distribution quantity of methamphetamine found in [Ms.

Setiyaningsih's] car on the day of the traffic stop is particularly serious," and that this

weighed against compassionate release, does not constitute an abuse of discretion. R. vol.

2 at 538.

  Ms. Setiyaningsih further contends that where, as here, a defendant has serious

medical issues, just punishment may require a shorter custodial sentence. Opening Br. at

30. The record suggests Ms. Setiyaningsih has health problems, but that does not mean

the district court abused its discretion in denying compassionate release. The district

court emphasized that Ms. Setiyaningsih was seeking a sentence reduction to time served but had only served two years of her fifteen-year term of imprisonment. We discern no error in the district court's determination that, under these circumstances, "[t]wo years of custody would not promote respect for the law, just punishment, or adequate deterrence to criminal conduct." R. vol. 2 at 538.

### C.    The need to protect the public from further crimes of the defendant

Ms. Setiyaningsih further challenges the district court's conclusion that the need to protect the public under § 3553(a)(2)(C) weighed against a sentence reduction. On appeal, Ms. Setiyaningsih asserts she is "not a violent person at all," Opening Br. at 1, and that she "will serve [her] home confinement sentence . . . confined not just to a house, but to a wheelchair as well," *id.* at 30. Even assuming the validity of her contentions, we are not persuaded the district court erred.

The district court concluded that "with only two years of custody on her charges, there is significant need to protect the public from further crimes of [Ms. Setiyaningsih]." R. vol. 2 at 538. The district court also observed that Ms. Setiyaningsih's medical conditions predated her offense of conviction, thus undermining her claim that her medical conditions diminish her risk of recidivism. *Id.* As Ms. Setiyaningsih acknowledges, "Even prior to sentencing, my records disclosed that I had two prior strokes, the last one being about a year before my arrest." Opening Br. at 2. And her most recent convictions involved the possession of 1.2 kilograms of methamphetamine

and a firearm. The district court did not abuse its discretion by finding the need to protect the public weighed against the requested sentence reduction.

### D.     The need to provide defendant with medical care in the most effective manner

Ms. Setiyaningsih also insists the district court erred in rejecting her argument that the need to provide her with medical care under § 3553(a)(2)(D) compelled compassionate release. Ms. Setiyaningsih maintains she has consistently received sub-standard medical care while serving her custodial sentence. The district court disagreed, concluding "voluminous medical records demonstrate that BOP is providing the needed medical care." R. vol. 2 at 539. And the district court was not persuaded "that BOP is failing to provide needed medical care" based on Ms. Setiyaningsih's contention that she needs additional or different care for her many health conditions. *Id.*

The government correctly points out Ms. Setiyaningsih is serving her sentence at a federal medical facility, but that alone does not resolve Ms. Setiyaningsih's claim that she is receiving inadequate medical care. Rather, the district court appropriately reviewed Ms. Setiyaningsih's medical records and only then rejected her argument that § 3553(a)(2)(D) counseled in favor of a sentence reduction. Again, we discern no reversible error.

### E.     The need to avoid unwarranted sentencing disparities

Finally, Ms. Setiyaningsih urges reversal based on the district court's conclusion that the need to avoid unwarranted sentencing disparities under § 3553(a)(6) weighed against a sentence reduction. The district court explained Ms. Setiyaningsih's custodial

8

sentence is "below the advisory range" and "[a]ny offender with a similar total offense level and criminal history category, faced with the same firearm offense, would serve more time than the total fifteen years to which [she] is sentenced." R. vol. 2 at 539.

On appeal, Ms. Setiyaningsih argues that reducing her sentence to time served and imposing a term of supervised release with a special condition of home confinement would not constitute a "windfall." Opening Br. at 23. She also contends, "Sending me to home confinement does not free me from serving the sentence imposed by the Court." *Id.* at 29. We are not persuaded.

The record shows Ms. Setiyaningsih was sentenced to 15 years' imprisonment—the mandatory minimum for the offenses she committed—and granting her requested sentence reduction would reduce her term of incarceration by approximately ten years. While the district court stopped short of fully analyzing sentencing disparity, we see no "clear error of judgment" in finding this factor weighed against compassionate release. *Hald*, 8 F.4th at 949.[4]

## CONCLUSION

We **AFFIRM** the denial of Ms. Setiyaningsih's § 3582(c)(1)(A) motion for compassionate release. Ms. Setiyaningsih's Reply Brief exceeds the length permitted

---

[4] Ms. Setiyaningsih also contends her sentence should be reduced under the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, and the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. The government correctly points out Ms. Setiyaningsih waived appellate review of this issue by failing to raise it with the district court and then failing to argue plain error on appeal. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). But even on the merits her arguments fail. Because Ms. Setiyaningsih's conviction was for methamphetamine—not crack cocaine—neither the Fair Sentencing Act nor the First Step Act impact her mandatory minimum

by Federal Rule of Appellate Procedure 32(a)(7). We construe her Reply Brief as a

motion to file an oversized brief and **GRANT** the motion.

Entered for the Court


Veronica S. Rossman
Circuit Judge

---

sentences. *See United States v. Brown*, 974 F.3d 1137, 1142 (10th Cir. 2020) ("[T]he
Fair Sentencing Act was passed to remedy the 100:1 crack-to-powder cocaine sentencing
disparity . . . ."); *United States v. Broadway*, 1 F.4th 1206, 1209 (10th Cir. 2021) ("The
First Step Act made the Fair Sentencing Act's changes to crack cocaine penalties
retroactive . . . ."). And the First Step Act only applies to a defendant sentenced to a
"second or subsequent conviction of § 924(c)," *United States v. Maumau*, 993 F.3d
821, 824 (10th Cir. 2021), and does not change the mandatory minimum sentence
required for a single § 924(c) offense.