RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 21-3753

CALVIN CAVER,

*Defendant-Appellant*.

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:03-cr-00486-4—John R. Adams, District Judge.

Decided and Filed:  May 7, 2024

Before:  BOGGS, KETHLEDGE, and MURPHY, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Jay R. Carson, Mary E. Dennison, WEGMAN HESSLER VALORE, Cleveland, Ohio, for Appellant.  Adam J. Joines, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

MURPHY, Circuit Judge.  At the time of Calvin Caver's sentencing, the federal drug laws subjected Caver to a mandatory term of life imprisonment because he conspired to distribute more than 50 grams of "crack" cocaine and had committed three prior "felony drug offenses."  Later, however, the Fair Sentencing Act of 2010 increased the amount of crack cocaine required to trigger this life sentence to 280 grams.  The First Step Act of 2018 then allowed defendants like Caver to seek retroactive relief "as if" they had committed their crimes

after the Fair Sentencing Act. Caver sought a reduced sentence under the First Step Act. But the district court held that this Act gave it no discretion to grant him relief. It reasoned that Caver's jury had found that his drug crime involved at least 500 grams of crack cocaine—an amount that still exceeded the 280 grams required to trigger a mandatory life sentence after the Fair Sentencing Act. We agree and affirm.

I

In the early 2000s, Caver joined a large drug-trafficking conspiracy centered in Cleveland, Ohio. *See United States v. Caver*, 470 F.3d 220, 228–32 (6th Cir. 2006). The police learned of this conspiracy during an investigation, code named "Operation Snow Removal," that targeted high-crime neighborhoods in Cleveland. *See id.* at 228. Their investigation led the United States to indict fifteen coconspirators, including Caver, on several drug charges. *See id.* at 229. Most defendants pleaded guilty. *See id.* at 227. Caver did not.

The government ultimately obtained a superseding indictment that charged Caver with three offenses, including a conspiracy to distribute over 50 grams of crack cocaine. 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (2000); *id.*, § 846. This indictment also included "specifications" alleging other facts. The government added these specifications because the caselaw at the time left much uncertainty over what facts a jury must find beyond a reasonable doubt in order to increase a defendant's sentence. As relevant here, the indictment specified that Caver's drug conspiracy involved at least 1.5 kilograms of crack cocaine. *See Caver*, 470 F.3d at 229 n.4.

A jury convicted Caver of all three counts. *See id.* at 232. But the jury also concluded that Caver's conspiracy had involved a smaller quantity of drugs than the indictment alleged. It found that Caver had conspired to distribute between 500 grams and 1.5 kilograms of crack cocaine. *See id.* at 248 n.17.

Nonetheless, Caver's conspiracy conviction still triggered a mandatory sentence of life imprisonment. At that time, the drug laws (namely, 21 U.S.C. § 841(b)(1)(A)) imposed this harsh punishment if a crime involved "50 grams or more" of crack cocaine and if a defendant had "two or more prior convictions" falling within the definition of "felony drug offense." 21 U.S.C. § 841(b)(1)(A)(iii) (2000); *id.* § 846. Caver met both conditions. The jury found that

his conspiracy involved over 50 grams of crack cocaine.  And the district court found that three of his prior convictions qualified as "felony drug offenses."  While the court criticized this mandatory life sentence as excessive, it imposed that penalty.  We affirmed Caver's convictions and sentence on direct appeal.  *Caver*, 470 F.3d at 250.

After Caver's convictions became final, the executive and legislative branches both took actions that implicated his life sentence.  Most significantly, President Obama granted Caver clemency in 2017.  The President reduced Caver's sentence from life to 240 months of imprisonment.

Next, Congress passed two laws that amended 21 U.S.C. § 841(b)(1)(A), the statute underlying Caver's life sentence. The Fair Sentencing Act of 2010 amended § 841(b)(1)(A) by increasing the amount of crack cocaine required to trigger this mandatory-minimum penalty from 50 grams to 280 grams.  Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372; *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2012).  The Fair Sentencing Act did not permit relief for defendants like Caver whose sentences had become final before its enactment.  *See United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc).  Eight years later, though, the First Step Act of 2018 allowed defendants who had been sentenced before the Fair Sentencing Act to move for belated relief based on that Act's drug-quantity change to § 841(b)(1)(A).  *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222.

Caver sought to take advantage of the First Step Act's retroactivity provision.  He moved the district court to reduce his commuted 240-month sentence even lower.  The district court denied his motion.  *United States v. Caver*, 2021 WL 3406377, at *2–3 (N.D. Ohio Aug. 4, 2021).

II

On appeal, Caver raises a "procedural" challenge to the district court's denial of First Step Act relief.  *See United States v. Goodwin*, 87 F.4th 321, 326 (6th Cir. 2023).  He argues that the court erred by denying relief without proceeding through the full two-step process that our caselaw has established for evaluating motions to reduce a sentence under the First Step Act. *See, e.g.*, *id.* at 326–27; *United States v. Boulding*, 960 F.3d 774, 782–84 (6th Cir. 2020).

At the outset, Caver can qualify for this two-step review process only if the First Step Act made him eligible to seek retroactive relief. *See United States v. Domenech*, 63 F.4th 1078, 1083 (6th Cir. 2023). The First Step Act renders him eligible if the jury convicted him of a "covered offense." § 404(b), 132 Stat. at 5222. It defines "covered offense" to "mean[] a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. The phrase "violation of a Federal criminal statute" in this statutory definition refers to a defendant's "offense" of conviction. *See Terry v. United States*, 593 U.S. 486, 492 (2021).

Applying the definition, the government concedes that—"[a]s a technical matter"—Caver's crime qualifies as a "covered offense." Appellee's Br. 20. The jury found him guilty of conspiring to violate 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii)—provisions that, at the time, barred the distribution of 50 grams or more of crack cocaine. *Id.* § 841(a)(1), (b)(1)(A)(iii) (2000); *see id.* § 846. The government agrees that Caver engaged in this conspiracy before August 2010. It also agrees that § 2 of the Fair Sentencing Act "modified" the "statutory penalties" for this offense. First Step Act, § 404(a), 132 Stat. at 5222. The conspiracy statute (§ 846) incorporates the "same penalties" that would apply for the substantive drug crime that Caver conspired to commit (the violation of § 841(a)(1) and (b)(1)(A)(iii)). 21 U.S.C. § 846. And § 2 of the Fair Sentencing Act changed the amount of crack cocaine required to commit this drug crime. 124 Stat. at 2372; *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2012). Given the government's concession that this change rendered Caver's conspiracy a "covered offense," we may assume the point.

If a jury has convicted a defendant of a covered offense, the First Step Act then provides that the court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. Because "may" does not mean "must," district courts generally have discretion when deciding whether (and to what extent) they should reduce a defendant's sentence. *See Concepcion v. United States*, 597 U.S. 481, 501 (2022).

Nevertheless, we have divided this discretionary decision into two steps. *See United States v. Woods*, 61 F.4th 471, 477 (6th Cir. 2023). The first step involves a legal inquiry rather than a discretionary one: A district court should recalculate a defendant's "Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Concepcion*, 597 U.S. at 498 n.6. These recalculations may not incorporate any other legal or factual changes that have happened since the defendant's original sentencing. *See id.*; *see also Goodwin*, 87 F.4th at 326–27. The second step then triggers a district court's discretion: the court should balance the sentencing factors in 18 U.S.C. § 3553(a) to decide on the proper reduction (if any) to a sentence. *See Goodwin*, 87 F.4th at 326–27. At this discretionary stage, the court may consider other legal or factual developments that have happened since the original sentencing. *See Concepcion*, 597 U.S. at 496–500. Just as in an initial sentencing, though, the recalculated guidelines range should still anchor the court's discretionary balancing. *See Goodwin*, 87 F.4th at 326–27.

In this case, we need not proceed past the first (non-discretionary) step at which a district court recalculates a defendant's guidelines range using only the Fair Sentencing Act's changes. *See Domenech*, 63 F.4th at 1083. But we must clarify what this step entails. District courts should recalculate not just a defendant's *guidelines* range but also the defendant's *statutory* range, including any mandatory minimum that the defendant would face after the Fair Sentencing Act.

This case's facts show why we must make this clarification. At the time of Caver's sentencing, his conspiracy offense (when combined with his prior convictions) subjected him to life imprisonment if the offense involved "50 grams or more" of crack cocaine. 21 U.S.C. § 841(b)(1)(A)(iii) (2000); *id.* § 846. Section 2 of the Fair Sentencing Act amended this subparagraph "by striking '50 grams' and inserting '280 grams'" in its place. 124 Stat. at 2372. Even after the Fair Sentencing Act, then, a defendant such as Caver still faced "a mandatory term of life imprisonment" if the defendant conspired to distribute "280 grams or more" of crack cocaine. 21 U.S.C. § 841(b)(1)(A)(iii) (2012); *id.* § 846. And here, Caver's indictment alleged that his conspiracy involved at least "1.5 kilograms" of crack cocaine—well above the 50 grams required at that time to fall within § 841(b)(1)(A)(iii). Indict., R.301, PageID 910.

While Caver's jury did not find this quantity of drugs, it did conclude that the offense involved "at least 500 grams" of crack cocaine. Verd., R.366, PageID 1225. That amount still exceeded the 280 grams that would have subjected Caver to a mandatory life sentence after the Fair Sentencing Act. The district court thus held that it must deny relief to Caver and that it lacked the usual discretion that the First Step Act gives district courts to reduce a sentence. *See Caver*, 2021 WL 3406377, at *2.

Caver now argues that, although his jury's drug-quantity finding subjected him to a mandatory-minimum term of life imprisonment even under the Fair Sentencing Act, the First Step Act gave the district court discretion to reduce his sentence below that mandatory minimum (and, indeed, below his commuted term of 240 months). We disagree. If the Fair Sentencing Act's changes would still trigger the same mandatory-minimum sentence that a district court originally imposed, a district court lacks discretion to reduce the defendant's sentence below that minimum under the First Step Act. Both text and precedent justify this rule.

Start with the text. Again, the First Step Act allows a court to "impose a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222 (emphasis added). The "as if" phrase conveys that a court should change "just one variable" when recalculating a defendant's revised statutory sentencing range: the court should now use the relevant drug quantities listed in the Fair Sentencing Act. *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021). And no reasonable person would interpret language that allows a district court to rely on the Fair Sentencing Act as also giving the court the power to *violate* that Act by departing below its mandatory-minimum punishment. After all, black-letter law prohibits district courts from sentencing defendants below mandatory-minimum terms imposed by Congress. *See Pulsifer v. United States*, 144 S. Ct. 718, 723 (2024); *Dorsey v. United States*, 567 U.S. 260, 266–67 (2012); *United States v. Branch*, 537 F.3d 582, 591 (6th Cir. 2008); *United States v. Krumnow*, 476 F.3d 294, 297 (5th Cir. 2007). And we must interpret the First Step Act's "as if" clause against "well-established" sentencing principles like this one. *Concepcion*, 597 U.S. at 495.

Our precedent points the same way. To be sure, the parties cite no First Step Act case from our court in which the revised statutory range has mattered. But our repeated instruction

that district courts must start by recalculating a defendant's guidelines range using the Fair Sentencing Act's changes makes clear that courts must identify the statutory range too. *See Goodwin*, 87 F.4th at 326; *Domenech*, 63 F.4th at 1083. That is because the guidelines themselves incorporate this statutory range. They say that "the *statutorily* required minimum sentence shall be the guideline sentence" if the guidelines range otherwise falls below that statutory minimum. U.S.S.G. § 5G1.1(b) (emphasis added); *see United States v. Johnson*, 564 F.3d 419, 423 (6th Cir. 2009).

Other circuits have reached similar conclusions. In a variety of contexts, these circuits have recognized that district courts cannot reduce an eligible defendant's sentence under the First Step Act if the defendant has already "received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act." *United States v. Jackson*, 58 F.4th 1331, 1334 (11th Cir. 2023) (citation omitted); *United States v. Winters*, 986 F.3d 942, 951 (5th Cir. 2021). Consider *United States v. Echeverry*, 978 F.3d 857 (2d Cir. 2020) (per curiam). There, the district court originally imposed a mandatory-minimum 120-month sentence because the defendant had conspired to distribute the required amounts of each of three drugs: cocaine, crack cocaine, and heroin. *See id.* at 858. Although the Fair Sentencing Act increased the quantities of crack cocaine required to trigger this minimum, it did not change the required quantities of cocaine or heroin. *See id.* at 859–60. So the defendant still faced the 120-month minimum even after the Fair Sentencing Act. *Id.* at 860. On these facts, the Second Circuit held that the district court "lacked the authority" to reduce his sentence. *Id.*; *see also United States v. McCoy*, 88 F.4th 908, 913–14 (11th Cir. 2023); *United States v. Johnson*, 830 F. App'x 772, 773 (7th Cir. 2020) (order).

All told, no plausible reading of the First Step Act or the caselaw interpreting it permitted the district court to sentence Caver below the mandatory-minimum term that he faced under the Fair Sentencing Act. And that holding dooms Caver's procedural argument that the district court erred by refusing to recalculate his guidelines range (at step one) or engage in the discretionary balancing of the § 3553(a) factors (at step two). These separate inquiries would have served no purpose because the court "lacked the authority" to reduce Caver's sentence no matter how they played out. *Echeverry*, 978 F.3d at 860. In other words, the question whether the Fair

Sentencing Act would subject Caver to the same mandatory minimum arises before the court needs to consider other guidelines issues and before its "discretion comes into play[.]" *Jackson*, 58 F.4th at 1336.

Caver's responses do not change things. He first suggests that he no longer faced a mandatory life sentence when the district court denied his motion. But he supports this claim with an irrelevant legal change. Apart from making the Fair Sentencing Act partially retroactive, the First Step Act altered § 841(b)(1)(A) in other ways. Among other things, it reduced the mandatory-minimum sentence from life to 25 years for defendants like Caver with two or more qualifying convictions. § 401(a)(2)(A)(ii), 132 Stat. at 5220. Yet these amendments do Caver no good. They do not apply retroactively to defendants whose sentences have become final before the First Step Act. *Id.* § 401(c); *see United States v. Johnson*, 2022 WL 19732837, at *1 (6th Cir. Nov. 10, 2022) (order); *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019). And the district court could consider unrelated legal changes only when undertaking the discretionary balancing of the § 3553(a) factors. *See Concepcion*, 597 U.S. at 496–500. So that court could not apply these changes when recalculating Caver's statutory minimum. *See id.* at 498 n.6.

Caver next cites cases that have held that courts have discretion to reduce a defendant's sentence even if the defendant's guidelines range remains the same after incorporating the Fair Sentencing Act's changes. *See, e.g.*, *United States v. Clemon*, 2019 WL 6894130, at *1 (D.S.C. Dec. 18, 2019); *United States v. Bean*, 2019 WL 2537435, at *5–6 (W.D. Mich. June 20, 2019). This argument conflates the *guidelines* range with the *statutory* range. The first is advisory. *See Booker v. United States*, 543 U.S. 220, 245 (2005). The second is mandatory. *See Branch*, 537 F.3d at 594–95. As a result, the fact that a district court has the power to reduce a defendant's sentence below the guidelines floor says nothing about whether the court also has the power to reduce the sentence below the statutory floor. It does not.

So Caver turns to a different (more complicated) question: How should a court determine the drug quantity involved in a defendant's drug offense for purposes of identifying the defendant's statutory minimum after the Fair Sentencing Act? Suppose the indictment charged the defendant with distributing only 50 grams of crack cocaine (the quantity that triggered

§ 841(b)(1)(A)'s mandatory minimum before the Fair Sentencing Act). Yet suppose further that other facts in the record indicate that the defendant distributed over 280 grams (the quantity that triggered § 841(b)(1)(A)'s mandatory minimum after the Fair Sentencing Act). For example, the sentencing court might have found that the crime involved more than 280 grams when calculating the defendant's guidelines range. *See Boulding*, 960 F.3d at 776 (650.4 grams); *United States v. Garrett*, 2019 WL 2603531, at *1, *3 n.1 (S.D. Ind. Jun. 25, 2019) (315.35 grams). Or the defendant might have stipulated in a plea agreement that the crime involved more than 280 grams. *See United States v. Broadway*, 1 F.4th 1206, 1208 (10th Cir. 2021) (487.82 grams). Or, in much older cases, the court might have found that the crime involved more than 280 grams when calculating the defendant's mandatory minimum in § 841(b)(1)(A). *See Jackson*, 58 F.4th at 1333 (287 grams). That is because most courts treated the drug quantities in § 841(b)(1) as sentencing factors for courts (not juries) before the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See United States v. Moreno*, 899 F.2d 465, 473 (6th Cir. 1990). When considering a First Step Act motion, should a court facing one of these examples use only the minimum quantity in the indictment to determine the defendant's statutory minimum after the Fair Sentencing Act? Or should it use any larger quantities that the record reveals?

This question has seemingly caused some disagreement between circuits. The Tenth Circuit has held that the court should look only to the "offense of conviction" (that is, only to the lower quantity listed in the indictment) even when a defendant ultimately admitted in a plea agreement that he distributed a much larger quantity. *See Broadway*, 1 F.4th at 1211. It reasoned, among other things, that relying on the larger amounts evident in the record would require a court to consider too many "counterfactuals," including whether the government would have charged the larger quantity in the indictment if the Fair Sentencing Act had existed at the time, whether the defendant would still have pleaded guilty, and (if not) whether a jury would have found that quantity beyond a reasonable doubt. *See id.* at 1211–12; *see also United States v. Wynn*, 2023 WL 1305109, at *2 (6th Cir. Jan. 31, 2023). The Eleventh Circuit, by contrast, has consistently held that a court considering a First Step Act motion must accept any larger drug quantity that a pre-*Apprendi* sentencing court found—even if the indictment did not include that larger quantity. *See Jackson*, 58 F.4th at 1336; *see also, e.g.*, *McCoy*, 88 F.4th at 913–14.

We need not enter this debate to resolve Caver's case. His argument overlooks a critical distinction between those cases and this one. Here, the government included the larger drug quantity in the indictment, and the jury (not the court) found beyond a reasonable doubt that the crime involved at least 500 grams of crack cocaine. Even under the Tenth Circuit's approach, then, the government treated the larger quantity as an element of the "offense of conviction[.]" *Broadway*, 1 F.4th at 1211. As a result, we need not consider any of the "counterfactuals" that concerned the Tenth Circuit (if not the Eleventh). *Id.* at 1212. We *know* that the government indicted Caver for conspiring to distribute more than 280 grams of crack cocaine. And we *know* that the jury found more than that amount. Given these historical facts, no doubt exists that Caver would have still faced a mandatory life sentence even "if section[] 2 . . . of the Fair Sentencing Act . . . were in effect at the time" of his crime. § 404(b), 132 Stat. at 5222. That conclusion bars him from seeking a reduced sentence under the First Step Act.

We affirm.