RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARSHANE WOODS (21-5734); TERRY WOODS (21-5742),

*Defendants-Appellants*.

⎤
⎥
⎥
⎥
⎥
⎥
⎥ Nos. 21-5734/5742
⎥
⎥
⎥
⎥
⎦

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
No. 2:03-cr-00069—Robert Leon Jordan, District Judge.

Argued: December 7, 2022

Decided and Filed: March 1, 2023

Before: BOGGS, STRANCH, and THAPAR, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellants. Samuel R. Fitzpatrick, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellants. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

BOGGS, Circuit Judge. Brothers Marshane and Terry Woods were convicted in 2005 of conspiring to distribute crack and powder cocaine. In seeking new sentences under the First Step

Act of 2018, they confirmed that they were career offenders, and the district court relied on this consideration in deciding the amount by which it reduced their sentences.  On appeal, the Woods brothers now argue that the district court erred by failing to recognize that, under current law, they were never career offenders.  While an error occurred, it was invited by the defendants and was not so plain as to warrant remand.  We affirm.

## I.  BACKGROUND

### A.  Initial Sentencing

In 2005, a jury convicted Marshane and Terry Woods of conspiring to distribute, and to possess with intent to distribute, at least five kilograms of powder cocaine and at least fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a) and 846. *United States v. Woods*, 187 F. App'x 524, 525 (6th Cir. 2006) (per curiam).

At that time, the statutory penalty range for the brothers' offense was ten years to life. 21 U.S.C. § 841(b)(1)(A) (2003) (amended 2018).  However, the government filed pre-trial notices under 21 U.S.C. § 851 for each brother, stating its intent to rely on prior convictions to increase their statutory penalties.  Because each brother had at least two prior convictions for a "felony drug offense," their latest convictions required sentences of life in prison. *Ibid.*

Federal probation officers also prepared presentence reports (PSRs) that calculated the brothers' penalty range under the U.S. Sentencing Guidelines.  The Guidelines range for Marshane and Terry was 360 months to life.  Based on "conservative estimates from trial testimony and actual drugs seized," the PSRs held the brothers accountable for 2.19 kilograms of crack cocaine, 33.62 kilograms of powder cocaine, and 44.47 kilograms of marijuana.  Under the Guidelines' drug-equivalency rules for offenses involving multiple drugs, by which each drug is converted to an amount of marijuana, the PSRs found the brothers responsible for the equivalent of 50,639.27 kilograms of marijuana.  That quantity entailed a base offense level of 38, enhanced by two levels for the presence of a firearm, for a total offense level of 40. U.S.S.G. § 2D1.1(b)(1), (c) (2010).  Marshane had twelve criminal-history points, *see id.* § 4A1.1, placing him in criminal-history category V. *Id.* ch. 5, pt. A. Terry had nineteen criminal-history points, *see id.* § 4A1.1, placing him in criminal-history category VI. *Id.* ch. 5, pt. A.  Under the

sentencing table, both Marshane's and Terry's Guidelines range of imprisonment was 360 months to life. *Ibid.*

Both PSRs also deemed Marshane and Terry career offenders. Under U.S.S.G. § 4B1.1(a), a defendant is a career offender if: (1) he was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled-substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled-substance offense. Marshane and Terry were older than eighteen when they conspired to distribute crack and powder cocaine. They each had been convicted of at least two prior felony controlled-substance offenses. And their instant offense, conspiracy, was understood at the time of sentencing to satisfy the definition of "controlled substance offense." *See* U.S.S.G. § 4B1.2 cmt. n.1 (2010) ("'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.").

As career offenders, the brothers were placed in criminal-history category VI. *Id.* § 4B1.1(b) (2010). And because their conspiracy carried a statutory maximum penalty of life, *see* 21 U.S.C. §§ 841(b)(1)(A), 846 (2003), the brothers were assigned an offense level of 37, § 4B1.1(b), for which the Guidelines range of imprisonment remained 360 months to life. *Id.* ch. 5, pt. A. Because the Woods brothers' base offense level as career offenders was lower than "the offense level otherwise applicable," it did not apply. U.S.S.G. § 4B1.1(b). We note, however, that the Guidelines ranges for both brothers would have been 360 months to life, regardless of whether they were deemed career offenders.

In February 2005, the district court sentenced the Woods brothers to life in prison.[1] They appealed, and the Sixth Circuit affirmed. *Woods*, 187 F. App'x at 525.

---

[1]The Woods brothers' statutory sentences of mandatory life imprisonment controlled their Guidelines ranges. Sentencing statutes "trump[]" the U.S. Sentencing Guidelines. *Dorsey v. United States*, 567 U.S. 260, 266 (2012). No matter what the Guidelines recommend, a judge cannot sentence an offender to a sentence above or below the penalty range specified in the federal statute criminalizing the offense at issue. *See ibid.*; U.S.S.G. § 5G1.1(b).

**B. Postsentencing Developments**

Five years after the Woods brothers were sentenced, Congress enacted the Fair Sentencing Act of 2010. Pub. L. No. 111-220, 124 Stat. 2372 (2010). Section 2 of the Act raised the amount of crack cocaine required to trigger the statutory penalties for crack-cocaine convictions. *Id.* § 2, 124 Stat. at 2372. Whereas violations involving at least fifty grams of crack cocaine had triggered a sentence of ten years to life, *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2003), the Act required at least 280 grams for the same statutory range. § 2, 124 Stat. at 2372. And where violations involving between five and fifty grams of crack cocaine had triggered a sentence of five to forty years, § 841(b)(1)(B)(iii) (2003), the Act required between 28 and 280 grams. § 2, 124 Stat. at 2372. The Act did not apply retroactively to those sentenced before it took effect on August 3, 2010, including Marshane and Terry Woods. *See Dorsey*, 567 U.S. at 281.

Meanwhile, the U.S. Sentencing Commission made several amendments to the Guidelines. In 2007, the Commission amended the Guidelines to change how multiple prior sentences are counted in calculating an offender's criminal history. U.S.S.G. App. C Supp., amend. 709 (2007). In 2010, the Commission amended its drug-equivalency tables to reflect the changes in the recently enacted Fair Sentencing Act. *See id.* § 2D1.1 cmt. n.10(D) (Supp. 2010) (equating one gram of crack cocaine with 3,571 grams of marijuana). And in 2014, the Commission reduced by two the base offense levels assigned to any quantities for powder- and crack-cocaine offenses. *Id.* App. C Supp., amend. 782 (2014); *see id.* § 1B1.10(b), (d) (making the amendment retroactive).

Though the government's section 851 notices still controlled the brothers' statutory penalty ranges under 21 U.S.C. § 841, these amendments altered the underlying Guidelines calculations that would apply. Under the 2018 Guidelines,[2] the drug quantities involved in Marshane's and Terry's offenses yield a base offense level of 34, enhanced to 36 for possession of a firearm. Marshane, in criminal-history category V, would see his Guidelines range drop from 360 months to life to 292 to 365 months. Terry, in criminal-history category VI, similarly

---

[2]At the time of the district court's First Step Act resentencing in July 2021, the current Guidelines were the 2018 Guidelines, effective November 1, 2018. Since that proceeding, the Sentencing Commission has released the 2021 Guidelines, effective November 1, 2021.

would see his Guidelines range fall to 324 to 405 months. However, if treated as career offenders, the brothers would have an offense level of 37 and a criminal-history category of VI, preserving a Guidelines range of 360 months to life.

In January 2017, President Obama commuted the brothers' sentences to 360 months, the bottom of their Guidelines ranges as career offenders.

In 2018, Congress passed the First Step Act (FSA) and made the Fair Sentencing Act's statutory changes retroactive. *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018) (codified at 21 U.S.C. § 841 note). Under the First Step Act, a person is eligible for a reduced sentence if he was sentenced for a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." *Id.* § 404(a). If he is eligible, the court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time" the offense was committed. *Id.* § 404(b) (internal citation omitted). Nothing in the First Step Act, however, "require[s] a court to reduce" the sentence of an eligible defendant. *Id.* § 404(c).

## C. Procedural History

In July 2020, Marshane and Terry each filed a motion for a sentence reduction under the First Step Act. Despite conceding that they are career offenders, the brothers asked the district court for a downward variance to reduce their sentences below their 360-months-to-life Guidelines ranges, emphasizing both their post-sentence rehabilitation and a recent Commission report recommending that offenders convicted only of drug-trafficking crimes should not be deemed career offenders. The government opposed a reduction, arguing that the brothers were ineligible for a reduction because the Fair Sentencing Act had not modified the statutory penalties for their offense that involved five kilograms or more of powder cocaine. The government also argued that, even if the brothers were eligible, no further reduction was warranted because they remained career offenders under the Fair Sentencing Act, and President Obama had already commuted their sentences to the bottom of their ranges under the Guidelines.

In July 2021, the district court granted reduced sentences of 306 months for Marshane and 324 months for Terry.  In separate orders, the district court rejected the government's ineligibility argument because the Fair Sentencing Act—made retroactive under the First Step Act—had reduced the statutory penalty for the crack-cocaine component of the brothers' offense. The district court next concluded from the brothers' arguments, PSRs, and post-conviction behavior that they "warranted" a sentence reduction, then moved to consider how much of a reduction to grant.  The district court noted that Marshane and Terry were career offenders under the 2018 Guidelines, meaning that they had an offense level of 37 and a criminal-history category of VI.  Citing Marshane's "exceptional" post-sentencing conduct and the seventeen years that had passed since his offense, the district court first varied downward by one offense level and then varied by another eighteen months from the bottom of the resulting range for Marshane.  Noting Terry's "generally positive" post-sentencing conduct, the district court varied downward by one offense level to impose a sentence at the bottom of the resulting range for Terry.  The district court also reduced the brothers' periods of supervised release from ten years to eight.  Marshane and Terry timely appealed their sentence reductions, arguing that the district court erred in calculating their amended Guidelines ranges.

## II. DISCUSSION

In resentencing proceedings under the First Step Act where the court elects to impose a reduced sentence, the Guidelines remain the "starting point and . . . initial benchmark" for a two-step procedure.  *Gall v. United States*, 552 U.S. 38, 49 (2007); *see Dillon v. United States*, 560 U.S. 817, 827 (2010).  First, a district court must recalculate the movant's "benchmark Guidelines range" that "'anchor[s]' the sentencing proceeding."  *Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022) (alteration in original) (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)).  Second, a court may exercise its discretion under 18 U.S.C. § 3553(a) to select an appropriate sentence that is consistent with statutorily prescribed sentencing objectives. *See id.* at 2401; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021); *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020).

We review these resentencing decisions under the First Step Act for abuse of discretion. *Boulding*, 960 F.3d at 784; *see United States v. Foreman*, 958 F.3d 506, 515 (6th Cir. 2020).

"[L]ike all sentences imposed by the district court, the resentencing decision under the First Step Act must not only be procedurally reasonable but substantively reasonable." *Boulding*, 960 F.3d at 783. A sentencing decision is procedurally unreasonable when a court, among other things, "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, . . . or fail[s] to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. But "[o]ther than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, appellate review should not be overly searching." *Concepcion*, 142 S. Ct. at 2404 (internal citation omitted) (citing *Gall*, 552 U.S. at 51).

We consider below whether the district court erred at either step of its resentencing of the Woods brothers.

**A. Guidelines Recalculation**

In challenging the size of their sentence reductions, the brothers argue that the district court procedurally erred in calculating their Guidelines ranges by failing to apply retroactively the Sixth Circuit's recent decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), under which Marshane and Terry are not, and should never have been sentenced as, career offenders. However, the district court could not consider—and did not err in failing to consider—the holding of *Havis* when calculating the brothers' amended Guidelines ranges.

*1. Legal Framework*

The First Step Act allows a district court to impose a reduced sentence "as if" the revised penalties for crack cocaine enacted in the Fair Sentencing Act were in effect at the time the offense at issue was committed. FSA § 404(b); *see Concepcion*, 142 S. Ct. at 2396. For a district court that chooses to modify a sentence, the Act requires it to "apply the legal changes in the Fair Sentencing Act when calculating a movant's Guidelines." *Id.* at 2402. In other words, the court must "calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Id.* at 2402 n.6.

However, the First Step Act "tells [courts] to alter just one variable in the original sentence, not all variables." *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021). District courts cannot recalculate a defendant's Guidelines range "in any way other than to reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 142 S. Ct. at 2402 n.6. With the Guidelines range "properly calculated" as a benchmark, district courts "may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence." *Ibid.*; *see Jarvis*, 999 F.3d at 445 (noting that a district court "could not rely on a non-retroactive sentencing law change in calculating the guidelines sentencing range, but it could consider that change in selecting an appropriate sentence under the § 3553(a) factors").

### 2. *Analysis*

Some context: During their 2005 sentencing, the Woods brothers were classified as career offenders because the Guidelines' commentary to U.S.S.G. § 4B1.2 recognized their conspiracy conviction as a predicate "controlled substance offense." U.S.S.G. § 4B1.2 cmt. n.1 (2010). However, in 2019, the Sixth Circuit, sitting en banc, held that, for career-offender purposes under the Guidelines, "controlled substance offenses" did not include attempt crimes. *Havis*, 927 F.3d at 387. We then relied on *Havis* to hold that a "controlled substance offense" also did not include a conspiracy to commit a controlled-substance offense. *United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020); *see also United States v. Butler*, 812 F. App'x 311, 314 (6th Cir. 2020) ("Although the specific facts of *Havis* involved an attempt crime, its reasoning applies with equal force to other inchoate crimes not listed in the text of § 4B1.2(b)."). Therefore, under the 2018 Guidelines, Terry and Marshane would not qualify as career offenders because their conspiracy convictions do not qualify as a predicate controlled substance offense.

The First Step Act does not allow a district court recalculating a person's Guidelines range to consider all Guidelines changes. Rather, the Act limits district courts to considering only those changes that "reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 142 S. Ct. 2389, 2402 n.6. Such changes include, for example, updates to the Guidelines' Drug Conversion Tables, for which the Commission "has used the sentences provided in, and equivalences derived from," the same statute that section 2 of the Fair

Sentencing Act amended. U.S.S.G. § 2D1.1 cmt. n.8. By amending the statutory penalties for crack-cocaine offenses, the Fair Sentencing Act changed the ratios on which the Guidelines' drug-equivalency rules were based.

We cannot attribute *Havis*'s change to the Guidelines' definition of a career offender to the Fair Sentencing Act. The First Step Act instructs the district court to sentence the Woods brothers "'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to sentencing law in the intervening years." *Maxwell*, 991 F.3d at 689. *Havis* is unrelated to the changes made in the Fair Sentencing Act, which did not affect whether, under the Guidelines, someone is a career offender. The components in the calculation of the Woods brothers' Guidelines ranges—their base offense level and criminal history—are set by the Guidelines' drug-conversion and drug-quantity tables under § 2D1.1(c), and by the brothers' career-offender designations in § 4B1.1. Both features of the brothers' sentencing have since been altered, but on different grounds. That the First Step Act requires district courts to account at the Guidelines-recalculation stage for one set of changes—those changes that reflect the Fair Sentencing Act's amendments—does not require district courts to account for all other Guidelines changes, including *Havis*'s change to the career-offender definition.

Marshane and Terry argue that the Supreme Court's recent decision in *Concepcion* required the district court to account for *all* retroactive legal changes, including *Havis*, when it recalculated their Guidelines ranges. They argue that the Court distinguished between retroactive and nonretroactive legal changes. Thus, in their view, by holding that district courts *could* consider unrelated, *nonretroactive* changes during their discretionary § 3553(a) analysis, the Court also implied that courts *must* consider *retroactive* changes. For the Woods brothers, the only logical reading of *Concepcion* is one where district courts must consider all retroactive legal changes when recalculating Guidelines ranges but may consider nonretroactive legal changes when deciding whether to vary from those calculations.

The Woods brothers read too much into both *Concepcion* and the First Step Act. To sharpen their contrast between retroactive and nonretroactive legal changes, Marshane and Terry claim that the Court's reference to Guidelines changes "unrelated" to changes to crack-cocaine

sentencing ranges, *id.* at 2400–02, meant only nonretroactive changes. But retroactive Guidelines changes also can be unrelated to changes to crack-cocaine sentencing ranges, and the Court did not suggest otherwise. More importantly, the brothers' reading of *Concepcion* relies on an overbroad interpretation of the First Step Act. Sentence-reduction proceedings are not "plenary resentencing[s]" in which district courts must recalculate the Guidelines ranges for old offenders under new law. *United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019); *see Maxwell*, 991 F.3d at 689. The First Step Act directs district courts to apply only sections 2 and 3 of the Fair Sentencing Act, not any other sections or statutes. To require more, at least when determining the Guidelines range that will "anchor" the Woods brothers' reduced sentences, would ignore the text of the Act. *Concepcion*, 142 S. Ct. at 2402 n.6 (quoting *Peugh*, 569 U.S. at 541).

Marshane and Terry also claim that their reading of *Concepcion* squares with the Sixth Circuit's recent cases on resentencings under the First Step Act. But the Sixth Circuit itself has been less than clear on what the First Step Act requires district courts to consider at the Guidelines-recalculation stage. *Compare United States v. Montgomery*, 998 F.3d 693, 697, 700 (6th Cir. 2021) (vacating a sentence where the district court failed to include a nonretroactive amendment in recalculating the correct Guidelines range), *and United States v. Johnson*, 26 F.4th 726, 732 n.2 (6th Cir. 2022) (including retroactive Guidelines amendments in its view of a correct Guidelines recalculation), *with Jarvis*, 999 F.3d at 445 (suggesting that district courts can consider nonretroactive amendments only in their § 3553(a) analysis), *and Maxwell*, 991 F.3d at 689–90 (requiring courts at the Guidelines-recalculation stage to account only for changes made under the Fair Sentencing Act). To the extent that these first two cases conflict with the legal reasoning of *Concepcion*, we may revisit them. *See United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 829 (6th Cir. 2021) ("[I]ntervening Supreme Court decisions allow a panel of our court to revisit prior precedent . . . ."); *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720–21 (6th Cir. 2016) ("[I]ntervening Supreme Court authority need not be precisely on point, if the legal reasoning is directly applicable.").

Of course, there is something unusual about asking a court, in stitching together old and new versions of the Guidelines, to give retroactive effect only to the Fair Sentencing Act. In this

process, the First Step Act would thus have the district court "perpetuate a Guidelines calculation error." *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020). However, the Act is best viewed not as a curb on district courts' discretion but rather as an instruction on the stage at which they may exercise it. In recalculating the Guidelines range that anchors the resentencing, a district court may account for only those changes in law that the First Step Act permits. But upon reaching a correct Guidelines range, the district court has discretion to consider all other intervening changes of law when deciding whether to vary from that range.

The district court did not procedurally err in reaching the correct Guidelines ranges for the Woods brothers. The court first deemed the brothers eligible for relief under the Act. Next, it determined their sentencing ranges, noting that, under their original PSRs, they were career offenders. The methodology outlined in the First Step Act—specifically recalculating the Guidelines in effect at the time of the brothers' offense, modified only by the Fair Sentencing Act—would have similarly determined that Marshane and Terry were career offenders and reached the same benchmark sentencing range.

Because the district court was not required to account for *Havis* in its initial Guidelines recalculations, we hold that the district court did not err in computing new Guidelines ranges for the Woods brothers.

## B. Section 3553(a)

Though ultimately discretionary, the court's § 3553(a) analysis was flawed because, upon "[a]pplying the 2018 guidelines manual," it relied on the erroneous conclusion that, under the Guidelines in force at the time of their 2021 resentencing, Marshane and Terry would be classified as career offenders. Because the Woods brothers contributed to that error in their motions for resentencing, the error must signal "manifest injustice" before we will review it. *United States v. Demmler*, 655 F.3d 451, 458 (6th Cir. 2011). The error in question does not clear that bar.

*1. Legal Framework*

After calculating the applicable Guidelines range, courts must consider the 18 U.S.C. § 3553(a) factors in fashioning a sentence. *See Gall*, 552 U.S. at 50. When deciding whether to modify a sentence or by how much, district courts enjoy broad discretion to consider intervening changes of law and fact. *See Concepcion*, 142 S. Ct. at 2404. Courts "regularly have considered . . . unrelated Guidelines amendments when raised by the parties" in First Step Act proceedings. *Id.* at 2402–03; *see United States v. Taylor*, 648 F.3d 417, 425 (6th Cir. 2011) ("[T]he district court can consider subsequent amendments to the Guidelines for purposes of fashioning an appropriate sentence [at resentencing.]"); *cf. Peugh*, 569 U.S. at 549 (noting that "newer Guidelines . . . have the status of one of many reasons a district court might give for *deviating* from the older Guidelines" at original sentencings).

We review for plain error unraised objections, of which invited errors are a subset that we review only when the "interests of justice demand" it. *Montgomery*, 998 F.3d at 698 (quoting *United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020)). A person "invites error when he contributes in some way to the district court's error without intentionally relinquishing his rights." *Ibid.* In that way, invited errors "fall[] within the continuum between forfeiture and waiver," *id.* at 696, where forfeiture "is the passive failure to make a timely assertion of a right," *id.* at 698, and waiver is the "intentional relinquishment or abandonment of a known right," *id.* at 697 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Although the party inviting error may obtain review when the interests of justice so demand, *id.* at 699, we generally adhere to "the principle that a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993) (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991)).

Upon deciding to review an invited error, we review it only for plain error. *See Montgomery*, 998 F.3d at 700. This inquiry requires a finding that the error was "so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Mahbub*, 818 F.3d 213, 229 (6th Cir. 2016) (quoting *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir. 2012)). To establish plain error, a defendant must show that: "(1) error occurred; (2) that error was obvious; (3) it affected the defendant's substantial rights; and (4) it affected the fairness,

integrity, or public reputation of judicial proceedings." *Montgomery*, 998 F.3d at 700 (citing *United States v. Mabee*, 765 F.3d 666, 673–74 (6th Cir. 2014)); *see also* Fed. R. Crim. P. 52(b).

### 2. Analysis

On appeal, Marshane and Terry raise several objections that they either invited or failed to raise below. In particular, they now raise arguments about how the district court applied the then-current 2018 Guidelines to them: that, under *Havis*, they are not career offenders; that *Havis* makes relevant a nonretroactive amendment that lowered Terry's underlying criminal-history category; and that the government's support for a bill to eliminate federal sentencing disparities between crack- and powder-cocaine offenses, if known to the court, would have affected their sentences. We decline to review the brothers' *Havis* argument and hold that none of the other forfeited objections warrant remand under the plain-error standard.

*Havis's change to the Guidelines' career-offender definition.* The Woods brothers' *Havis* argument is an invited error. They invited the district court to err in designating them as career offenders under the 2018 Guidelines when they wrote in their briefings that they "remain[] in the career offender guideline." In applying the 2018 Guidelines as part of its § 3553(a) analysis, the district court improperly assumed that Marshane and Terry were career offenders under current law—apparently unaware that the brothers would not be so classified in 2021, after *Havis* reinterpreted the 2018 Guidelines.[3]

The interests of justice do not demand that we review the brothers' invited *Havis* error. *Montgomery*, 998 F.3d at 699. First, the Woods brothers alone induced the district court's error. The erroneous suggestion that the brothers are career offenders under the 2018 Guidelines appeared only in their motions for resentencing. The government did not repeat this error in its responses below, nor did its arguments in opposition rest on any assumption that the brothers are career offenders under current law. The brothers' fault in inviting the error tracks invited-error

---

[3]In Marshane's sentence-reduction order, for example, the district court wrote that, "[a]pplying the 2018 guidelines manual, [his] guideline range is now 360 months to Life, based on [his career-offender status] . . . ." The court also wrote that Marshane's "non-Career Offender total offense level is now only 36," a conclusion it could reach only by applying the then-current Guidelines, not the Guidelines as they existed at the time of Marshane's original sentencing.

cases where the district court made an error "directly in response to [the defendant's] urging that it take that very course," *United States v. Hanna*, 661 F.3d 271, 293 (6th Cir. 2011), and differs from invited-error cases where the government and the defendant are "equally at fault." *Montgomery*, 998 F.3d at 699; *see also United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997) (concluding that "the government was as much at fault for inviting the error as the defendant since the parties stipulated to the same instructions").

The invited error also appears in a context that affords particularly "broad discretion" to district courts. *Concepcion*, 132 S. Ct. at 2404. While the First Step Act urges scrutiny of "legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes," appellate review of Guidelines-related errors made elsewhere, including at the § 3553(a) stage, "should not be overly searching." *Ibid.* That the district court made this error in exercising its discretion to apply the 2018 Guidelines distinguishes the Woods brothers' case from other Guidelines-related cases, such as *Rosales-Mireles v. United States*, where the district court sentenced a defendant "within the framework of an incorrect Guidelines range." 138 S. Ct. 1897, 1904 (2018) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). Here, the court did not miscalculate the Guidelines ranges that anchored the Woods brothers' sentences; rather, it took the extra step of considering the brothers' Guidelines ranges under current law. At that stage, the district court's error is not so grave as to demand correction.

The Woods brothers argue that "[i]t is difficult to see how the interests of justice would be served" by requiring them "to linger longer in prison" because no one, including the district court, noticed that the definition of a career offender had changed between their two sentencings to exclude conspiracy offenses. Appellant Br. at 31 (quoting *Montgomery*, 998 F.3d at 700). However, this argument carries less force in the § 3553(a) context, especially where, as here, the district court already decided to vary downward from the bottom of the defendants' Guidelines ranges to reduce their sentences.

Even if we were to review the brothers' *Havis* error, we would not find enough to satisfy the plain-error standard. To be sure, an error occurred. Although the court did not procedurally err in calculating the Woods brothers' ranges, it relied on a flawed understanding of the 2018 Guidelines in considering how much to deviate from the benchmark range. In the process, the

court mislabeled the Woods brothers as career offenders under the 2018 Guidelines by failing to account for *Havis*. Although the district court could not apply the current Guidelines at the outset, in calculating the brothers' benchmark ranges, it could—and tried to—apply those Guidelines during its discretionary § 3553(a) analysis. The court misapplied the Guidelines, creating an error.

But this error was not obvious. This circuit's recent decisions in *Havis* and *Cordero* established that, under § 4B1.2, "controlled substance offenses" include only completed crimes. That these decisions applied in First Step Act resentencings might have been "readily apparent" had the court been required to recalculate the Woods brothers' current Guidelines ranges before their new sentencing. *Montgomery*, 998 F.3d at 700. The district court here faced no such requirement. "All that is required" under the First Step Act, at least during the discretionary § 3553(a) analysis, "is for a district court to demonstrate that it has considered the arguments before it." *Concepcion*, 142 S. Ct. at 2405. The Woods brothers raised no *Havis* argument below, so the district court did consider the arguments before it. Because the district court did not need to apply the 2018 Guidelines, its error in applying them—an error that the Woods brothers invited—was not obvious.

Nor were Marshane and Terry's substantial rights affected. To satisfy this condition, the defendant "ordinarily must 'show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Rosales-Mireles*, 138 S. Ct. at 1904–05 (quoting *Molina-Martinez*, 136 S. Ct. at 1339). As discussed above, the district court's error may relate to the Guidelines, but it is not a Guidelines-related error of the sort that readily favors correction. In cases like *Molina-Martinez*, the district court's Guidelines error was deemed "particularly serious" because it resulted in an incorrect Guidelines range that anchored the defendant's sentences. 136 S. Ct. at 1345. By contrast, the error here resulted at the § 3553(a) stage, and served as only one factor among several used to inform the district court's discretionary decision. Given that the Woods brothers were deemed career offenders at the time of their original sentencing, and that the district court also relied on that understanding in varying their sentences, it is not at all clear that the court would have reached any different result had it recognized the application of *Havis*.

The Woods brothers note that we have remanded for resentencing in somewhat similar circumstances without discussing the type of error involved. In particular, they point to *United States v. Jackson*, where we amended our original decision and remanded upon learning that, months earlier, we had held in *Cordero* that conspiracy is not a controlled-substance offense. 995 F.3d 476, 482 (6th Cir. 2022). *Jackson*, however, concerned an oversight at the appellate level. Where one party invites the district court to err, by contrast, remand gives us pause—lest we discourage district courts from explaining their decisions in a context where the First Step Act "does not require 'courts to expressly rebut each argument,'" and requires only that a district court make clear that it "reasoned through [the parties'] arguments." *Concepcion*, 142 S. Ct. at 2404 (quoting *Maxwell*, 991 F.3d at 693–94).

*2007 Guidelines amendment.* Terry Woods's failure to argue that an amendment to § 4A1.2 lowered his underlying criminal-history category—an oversight that he attributes to the "globally mistaken belief that he [wa]s still a career offender automatically in [criminal-history category] VI"—similarly does not amount to plain error.

Of the nineteen criminal-history points charged to Terry in his original PSR, twelve resulted from convictions for which he was sentenced on the same day. Although this computation was consistent with the Guidelines at the time of Terry's sentencing,[4] a 2007 amendment, Amendment 709, changed how multiple prior sentences are counted for criminal-history purposes. This change had the effect of lowering Terry's criminal-history score under the 2018 Guidelines, which would yield for Terry a lower criminal-history category and, by extension, a lower non-career offender Guidelines range.[5]

---

[4]U.S.S.G. § 4A1.1(a) adds three points to a person's criminal history for each prior sentence of imprisonment exceeding one year and one month. "Prior sentences imposed in unrelated cases are to be counted separately," while "[p]rior sentences imposed in related cases are to be treated as one sentence." *Id.* § 4A1.2. At the time of Terry's sentencing in 2005, prior sentences were "considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Id.* cmt. n.3 (2004). Because Terry's 1986 convictions were consolidated for judgment, but not for trial or sentencing, they were deemed unrelated and counted separately.

[5]Under the 2007 amendment, prior sentences are counted as a single sentence if there is no intervening arrest between them and either (1) the sentences resulted from offenses contained in the same charging instrument; or (2) the sentences were imposed on the same day. U.S.S.G. App. C Supp., amend. 709 (2007); *see also id.* § 4A1.2(a)(2) (2018). Terry's sentences were imposed on the same day for each of the convictions in question. Under § 4A1.2(a)(2) as it existed in 2018, Terry would have been assigned three points where he had previously

This error does not warrant remand because our conclusion on the Woods brothers' *Havis* error renders it nearly irrelevant. As Terry acknowledges, the issue of his criminal-history-category calculation matters only after the district court accounts for *Havis* and removes his career-offender designation. This error-within-an-error is an additional degree removed from the type of obvious error that affects a defendant's substantial rights. If the court's *Havis* error does not pass plain-error review, then neither does its failure to account for Amendment 709 in applying the 2018 Guidelines to Terry's sentence.

*DOJ support for the EQUAL Act*. The Department of Justice's recently announced support for the EQUAL Act, which would eliminate federal sentencing disparities between crack- and powder-cocaine offenses, does not pass the bar for plain error. Unlike the district court's *Havis* and Amendment 709 errors, its unawareness of the government's official support for the bill is not connected to any Guidelines error. It is not clear that an error occurred at all, let alone one that is obvious and that affected the Woods brothers' substantial rights.

The Woods brothers argue that the government's support for the EQUAL Act, had the court known of it, would have "at the very least, supported" their request for a downward variance. In determining their sentences, however, the district court did not suggest any policy disagreement with the Guidelines. The court did not vary based on what it thought about the drug-sentencing disparities underlying the Guidelines, nor based on what the government, institutionally, might have thought about them. To remand whenever parties can point to a new rhetorical development—especially one grounded only in a policy position stated to Congress that lacks any legal force—would be inconsistent with the deferential review given to district courts in First Step Act proceedings.

## CONCLUSION

Because the Woods brothers' unraised objections in the district court do not pass this "more deferential standard of review on appeal," we decline to remand their cases for resentencing. *United States v. Simmons*, 587 F.3d 348, 358 n.6 (6th Cir. 2009). We **AFFIRM** the sentences imposed.

---

been assigned twelve, reducing his criminal-history score to ten; lowering his criminal-history category from VI to V; and shortening his overall Guidelines range as a non-career offender from 324–405 months to 292–365 months.