RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

              *Plaintiff-Appellee*,

    *v.*

CLARENCE GOODWIN,

              *Defendant-Appellant*.

No. 22-5845

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:08-cr-00104-1—Curtis L. Collier, District Judge.

Decided and Filed: November 28, 2023

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

    MURPHY, J., delivered the opinion of the court in which NALBANDIAN, J., joined. WHITE, J. (pp. 10–17), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

    MURPHY, Circuit Judge. In 2009, Clarence Goodwin received a 262-month sentence—one at the bottom of his guidelines range—for conspiring to distribute crack cocaine. The First Step Act of 2018 allowed defendants like Goodwin to seek a lower sentence based on changes to the sentencing laws that occurred after their offense. But the district court denied Goodwin's

motion for a reduced sentence primarily because his guidelines range remained the same even after considering these retroactive statutory changes. Goodwin now argues that the district court committed a procedural error by denying relief in a cursory order. He also argues that it committed a substantive error because his rehabilitation efforts (when combined with other legal changes) required the court to issue a below-guidelines sentence. Disagreeing on both fronts, we affirm.

I

In five transactions between April and June 2008, Goodwin distributed a total of 71.9 grams of crack cocaine to a confidential informant. As a result of this conduct, he pleaded guilty to a conspiracy to distribute at least 50 grams of crack cocaine in violation of 21 U.S.C. § 846. Goodwin had a prior "felony drug offense" within the meaning of the statute at the time. 21 U.S.C. § 841(b)(1)(A) (2006). He thus faced a statutory minimum 20-year sentence. *Id.* The district court also found that two of his prior offenses made him a "career offender" under the Sentencing Guidelines. *See* U.S.S.G. § 4B1.1(a) (2008). The court calculated his guidelines range as 262 to 327 months' imprisonment. It imposed a 262-month sentence.

Two relevant legal changes have occurred since Goodwin's sentencing. First, the Fair Sentencing Act of 2010 increased the amount of crack cocaine necessary to subject Goodwin to his 20-year minimum sentence from 50 grams to 280 grams. Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372, 2372. Second, the First Step Act of 2018 made this 2010 legal change retroactive. Pub. L. No. 115-391, § 404(a)–(b), 132 Stat. 5194, 5222. This second law permitted eligible defendants to ask the district court that sentenced them "to impose a reduced sentence" as if the Fair Sentencing Act had been in effect at the time of their offense. *Id.* § 404(b).

In 2019, Goodwin moved for a reduced sentence under the First Step Act. In June 2020, before the district court resolved this motion, the Bureau of Prisons decided to allow Goodwin to serve the remainder of his sentence in home confinement because of the COVID-19 pandemic. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). Two years later, the district court denied Goodwin's motion for a reduced sentence in a short order. Goodwin now appeals.

II

Just as a defendant can raise procedural and substantive challenges to an original sentence, *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019), a defendant can also raise either type of challenge to a denial of a sentence reduction under the First Step Act, *see United States v. Akridge*, 62 F.4th 258, 262 (6th Cir. 2023); *United States v. Braden*, 2022 WL 4393186, at *1 (6th Cir. Sept. 23, 2022) (per curiam); *United States v. Bailey*, 27 F.4th 1210, 1214 (6th Cir. 2022). In this appeal, Goodwin asserts both procedural and substantive reasons why the district court wrongly rejected his claim for relief under the First Step Act. We consider his arguments in turn.

*Procedural Challenge*. A defendant who raises a procedural challenge argues that the district court committed an error in the way that it denied a motion for a reduced sentence under the First Step Act. *See Braden*, 2022 WL 4393186, at *1; *cf. Parrish*, 915 F.3d at 1047. Perhaps a court miscalculated the revised guidelines range. *See United States v. Woods*, 61 F.4th 471, 478 (6th Cir. 2023). Or maybe it did not give a defendant the opportunity to argue for a reduced sentence. *See United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020). Or perhaps it thought it could not legally consider a factor—such as a defendant's rehabilitation efforts—that the First Step Act permitted it to rely on. *See United States v. Allen*, 956 F.3d 355, 357–58 (6th Cir. 2020).

This type of challenge requires us to start by identifying the process that district courts should follow when resolving an eligible defendant's motion for a reduced sentence. A district court should generally proceed in two steps. *See Woods*, 61 F.4th at 477. At step one, the court should recalculate the defendant's guidelines range using the "legal changes" from the Fair Sentencing Act that Congress made retroactive in the First Step Act. *Concepcion v. United States*, 142 S. Ct. 2389, 2402 (2022). The court at this recalculation stage may consider *only* these retroactive changes and no other legal changes that have occurred since a defendant's original sentencing. *Id.* at 2402 n.6; *see United States v. Domenech*, 63 F.4th 1078, 1083 (6th Cir. 2023).

At step two, the district court should choose the proper reduction by weighing the sentencing factors in § 3553(a). *See Woods*, 61 F.4th at 481; *Allen*, 956 F.3d at 357–58. The updated guidelines range should have its usual "anchor[ing]" effect on the court as it balances those factors and reaches its ultimate decision about whether (or how much) to reduce a sentence. *Concepcion*, 142 S. Ct. at 2402 n.6 (citation omitted); *United States v. Smith*, 959 F.3d 701, 703 (6th Cir. 2020) (order). When engaging in that balancing, moreover, a court should consider all "nonfrivolous arguments" in support of a reduction. *Concepcion*, 142 S. Ct. at 2404. Those arguments can include, among other things, reliance on intervening factual and legal changes since the original sentencing. *Id.* For example, a defendant who has been a model prisoner might warrant a sentence reduction more than one who has been a serial rule violator. *See Braden*, 2022 WL 4393186, at *2; *Allen*, 956 F.3d at 357–58. Other precedential and legislative changes might also show that a defendant's statutory or guidelines range would have been lower if a district court had sentenced the defendant from scratch today. *See Concepcion*, 142 S. Ct. at 2404; *United States v. Maxwell*, 991 F.3d 685, 691–93 (6th Cir. 2021). Ultimately, though, Congress gave district courts "broad discretion" to decide whether to reduce a sentence under the First Step Act. *Concepcion*, 142 S. Ct. at 2404.

This grant of discretion also gives district courts flexibility over how to convey the outcome of a motion for a reduced sentence to a defendant. *See id.* Although a district court must *consider* a defendant's arguments, it need not *respond* to the arguments with an exhaustive opinion rebutting each one. *Id.* at 2404–05. So long as the court's opinion allows us to conclude that it "reasoned through" a defendant's contentions, the court may deny relief with "a brief statement of reasons" and "without a detailed explanation." *Id.* at 2404 (citation omitted).

Our standard of review further reflects the district court's broad discretion. We, of course, must correct any purely legal mistakes—such as a miscalculation of the revised guidelines range—that a district court makes when deciding whether to reduce a sentence. *See id.* Otherwise, the Supreme Court has told us that our review of a district court's discretionary balancing of the § 3553(a) factors "should not be overly searching." *Id.* Circuit courts must review that balancing only for an abuse of discretion. *See Braden*, 2022 WL 4393186, at *1. We thus may reverse only when a defendant has "firmly" persuaded us that the district court

erred. *United States v. Pope*, 2022 WL 2064682, at *2 (6th Cir. June 8, 2022) (quoting *Bailey*, 27 F.4th at 1214).

Goodwin has failed to show that the district court committed the type of obvious error that would justify a reversal under this "deferential" standard of review. *Woods*, 61 F.4th at 485. To begin with, he does not argue that the district court committed a legal mistake. To the contrary, the court correctly found that the First Step Act made him "eligible" for a reduced sentence. Order, R.93, PageID 624. It also correctly found that Goodwin's revised guidelines range remained the same when considering *only* the relevant statutory change that the First Step Act made retroactive. *Concepcion*, 142 S. Ct. at 2402 n.6. Under this change, defendants must distribute 280 grams of crack cocaine (not just 50 grams) to trigger the 20-year statutory minimum sentence that Goodwin received due to his prior "felony drug offense." 21 U.S.C. § 841(a)(1)(A) (2012). So Goodwin's distribution of 71.9 grams no longer rendered him eligible for this 20-year minimum. His minimum instead became 10 years (for distributing over 28 grams). *See id.* § 841(a)(1)(B). But this single retroactive change did not alter Goodwin's career-offender status under U.S.S.G. § 4B1.1 because of his two prior drug offenses. Order, R.93, PageID 624. And his statutory maximum remained life imprisonment. 21 U.S.C. § 841(b)(1)(A)–(B) (2012). The change thus did not affect his career-offender offense level: 37. *See* U.S.S.G. § 4B1.1(b) (2008). Nor did it affect his guidelines range: 262 to 327 months' imprisonment. Order, R.93, PageID 624.

Next, the district court's order shows that it "reasoned through" Goodwin's arguments when exercising its discretion to retain a 262-month sentence. *Concepcion*, 142 S. Ct. at 2404. The court noted, for example, that it had "considered" Goodwin's reliance on two other nonretroactive legal changes that *would* have reduced his guidelines range if they had applied to him. Order, R.93, PageID 624. His prior "felony drug offense" would have no longer justified a statutory sentencing enhancement because of unrelated First Step Act changes. So his statutory sentencing range would have fallen to 5 to 40 years' imprisonment (rather than 10 years to life). *See* 21 U.S.C. § 841(b)(1)(B); First Step Act, § 401(a)(2)(ii), 132 Stat. at 5220. Separately, his prior drug offenses no longer would have triggered the career-offender enhancement after our decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc).

The district court also "reviewed" Goodwin's "evidence of rehabilitation." Order, R.93, PageID 624; *see Allen*, 956 F.3d at 357–58. Before the Bureau of Prisons had released him to home confinement because of the COVID-19 pandemic, he had spent years working in the "Inmate Companion Program" to help prisoners with medical needs. Mem., R.85-1, PageID 574. Two prison officials who operated this program submitted letters explaining that Goodwin had provided "outstanding" work and been "very attentive to the patients." *Id.*, PageID 574–75.

Despite these legal and factual developments, the court held that the 262-month sentence remained "sufficient but not greater than necessary." Order, R.93, PageID 624. It reached that result by considering both the "parties' arguments" and the § 3553(a) factors. *Id.* Most notably, the court explained that this sentence remained at the very bottom of Goodwin's revised guidelines range. *Id.*; 28 U.S.C. § 3553(a)(4). Again, this range should have "anchor[ed]" the court's discretionary decision. *Concepcion*, 142 S. Ct. at 2402 n.6 (citation omitted). In the end, we see no evidence that the district court failed to "consider" anything that Goodwin raised in support of his motion. *Id.* at 2405. And the First Step Act "required" nothing more. *Id.*

Goodwin responds that the district court's short order—with its mere four paragraphs of analysis—did not adequately respond to his reasons for a reduced sentence. Yet his argument would compel us to impose opinion-writing standards on district courts that the Supreme Court has refused to adopt. *See id.* at 2404. Indeed, the Court in a related context has held that a district court may resolve a motion for a reduced sentence in a form order that contains almost no reasoning other than the outcome. *See Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1965–68 (2018). We have extended *Chavez-Mesa*'s logic to short denials under the First Step Act when the district court chose to stick with a "bottom-of-Guidelines sentence." *Bailey*, 27 F.4th at 1214 (citing *United States v. Smith*, 958 F.3d 494, 500–01 (6th Cir. 2020)). This precedent applies here.

Our opinion in *Domenech* (the main decision that Goodwin cites to suggest that the district court should have written a longer opinion) does not help him. The district court there had committed a legal error by suggesting that it was not even required to *consider* a defendant's arguments in support of a reduced sentence. This view of the law left unclear whether the court had reasoned through the arguments. 63 F.4th at 1083. The district court in this case, by

contrast, committed no similar legal error. It repeatedly acknowledged that it had "consider[ed]" Goodwin's arguments. Order, R.93, PageID 624. It simply found them unpersuasive.

As for Goodwin's remaining claims, he largely reargues his motion for a reduced sentence to us. In particular, he highlights the Sentencing Commission's report to Congress from 2016 suggesting that § 4B1.1's career-offender enhancement should not apply to "[d]rug trafficking only career offenders" like Goodwin. U.S. Sentencing Comm'n, *Report to Congress: Career Offender Sentencing Enhancements* 3 (Aug. 2016). The district court's order did not mention this report. Yet it did not need to. The court had discretion when choosing the arguments to discuss. *Concepcion*, 142 S. Ct. at 2404. And it could treat Goodwin's reliance on this report as one of his weaker claims. This report has not convinced Congress to change the statutory provision mandating the career-offender guideline. *See* 28 U.S.C. § 994(h). Unlike Goodwin's reliance on *Havis* or on the First Step Act's nonretroactive statutory changes, then, his reliance on this report boils down to a "policy" disagreement with the *current* career-offender guideline. *Concepcion*, 142 S. Ct. at 2404. We have thus repeatedly noted that district courts do not err by failing to "respond directly" to this report in their orders denying a reduced sentence under the First Step Act. *United States v. Michael*, 836 F. App'x 408, 413 (6th Cir. 2020); *see Pope*, 2022 WL 2064682, at *5; *United States v. Williams*, 762 F. App'x 278, 284 (6th Cir. 2019).

Goodwin also asserts that the Due Process Clause barred the district court from relying on § 4B1.1's career-offender enhancement. Yet the Supreme Court has repeatedly rejected the claim that enhanced punishments for repeat offenders violate due process. *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 27 (1992); *Spencer v. Texas*, 385 U.S. 554, 560 (1967); *see also United States v. Potter*, 927 F.3d 446, 454–55 (6th Cir. 2019). These types of constitutional sentencing challenges generally run aground on the Supreme Court's deferential rational-basis test. *See, e.g.*, *Chapman v. United States*, 500 U.S. 453, 465 (1991); *United States v. Dunham*, 295 F.3d 605, 610–11 (6th Cir. 2002). Goodwin does not attempt to meet that test. He instead responds with cases indicating that a court violates due process if it relies on "false" or "unreliable" "evidence" when choosing a sentence. *United States v. Adams*, 873 F.3d 512, 518 (6th Cir. 2017) (citing cases). And he claims that the Commission's 2016 report shows that the career-offender enhancement is "unreliable" because career offenders like Goodwin who have

committed only drug-trafficking crimes commit future crimes at no greater rates than other drug-trafficking defendants.  But none of these cases articulated the governing legal test for challenging a *guideline*.  They instead addressed challenges to the use of false *evidence* to find erroneous facts.  *Adams*, 873 F.3d at 518; *see United States v. Wilson*, 614 F.3d 219, 225 (6th Cir. 2010); *United States v. Robinson*, 898 F.2d 1111, 1115–16 (6th Cir. 1990).  They thus do not apply here.

*Substantive Challenge*. A defendant who raises a substantive challenge, by contrast, attacks the ultimate sentence (the "bottom-line number") as "too long."  *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019) (citation omitted); *see Braden*, 2022 WL 4393186, at \*3; *Bailey*, 27 F.4th at 1215.  Defendants like Goodwin must meet a high bar to succeed on this type of claim.  For one thing, we have long applied a presumption of reasonableness to a district court's decision to impose a within-guidelines sentence.  *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)).  And we have since extended this presumption to within-guidelines decisions resolving motions for a reduced sentence under the First Step Act.  *See, e.g.*, *Braden*, 2022 WL 4393186, at \*3; *Pope*, 2022 WL 2064682, at \*5.  For another thing, we again review the substantive decision under a deferential abuse-of-discretion standard that requires a defendant to "firmly convince[]" us that the district court chose an excessive sentence.  *Pope*, 2022 WL 2064682, at \*5 (quoting *Bailey*, 27 F.4th at 1214).

Goodwin has failed to do so.  He suggests that the court's 262-month sentence placed too much "weight" on his guidelines range.  Appellant's Br. 45.  It did no such thing.  The district court could reasonably find that Goodwin's exemplary conduct in prison and the later legal changes did not justify a below-guidelines sentence when considering the other § 3553(a) factors.  As the government explained, Goodwin had committed a serious drug offense while on probation for an earlier one.  *See* 28 U.S.C. § 3553(a)(1).  He had a substantial criminal history.  *Id.*  And reliance on nonretroactive legal developments to vary below the guidelines range risked "unwarranted sentence disparities" with other defendants.  *Id.* § 3553(a)(6).  In particular, many other defendants who received career-offender enhancements only for their prior drug offenses (like Goodwin here) cannot use the First Step Act to reassess these career-offender enhancements, which have nothing to do with the legal changes that the First Step Act made

retroactive. *See Maxwell*, 991 F.3d at 693; *United States v. Ware*, 964 F.3d 482, 489 (6th Cir. 2020).

Goodwin alternatively asks us to reject the presumption of reasonableness for his within-guidelines sentence. That presumption rests on the conclusion that the Sentencing Commission and the district court have *both* agreed on the propriety of a defendant's sentence when the district court's chosen sentence falls within the guidelines range that the Commission has recommended. *See Rita*, 551 U.S. at 347. As the Court has recognized, this "double determination" permits an appellate court to presume that the "sentence is a reasonable one." *Id.* Here, however, Goodwin argues that the Commission's 2016 report shows that it believes that the career-offender guideline imposes excessive sentences for defendants like Goodwin who receive the enhancement based only on prior drug offenses. We have seen (and rejected) arguments like this before. The career-offender provision remains in place for a reason: because *Congress*—not the *Commission*—has seen fit to keep it. *See* 28 U.S.C. § 994(h). And when congressional policy "judgments" undergird a guideline, our presumption of reasonableness should, if anything, increase. *United States v. Bistline*, 665 F.3d 758, 761–64 (6th Cir. 2012). In that scenario, a coordinate branch of government (not just an administrative body) has found certain sentences reasonable. *See id.*; *see also Lynde*, 926 F.3d at 280–81. The Commission's report thus offers no basis to reject the presumption here.

\* \* \*

We may well have opted to vary downward if Congress had given us the responsibility to decide Goodwin's motion for a reduced sentence in the first instance. At the least, we may have issued a more thorough opinion explaining our reasons for denying relief. After all, it is not every day that prison staff submit letters of recommendation supporting a defendant's request. But we do not bear that responsibility. And we must respect Congress's choice to give district courts—not circuit courts—broad discretion to implement the First Step Act's retroactivity provision. The district court's brief order in this case did not abuse that discretion.

We thus affirm.

―――――――――――

**DISSENT**

―――――――――――

HELENE N. WHITE, Circuit Judge, dissenting. Clarence Goodwin was sentenced in June 2009 to 262 months in prison after pleading guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine. After the First Step Act's changes to the powder-to-crack cocaine ratio were made retroactive, Goodwin filed a motion to reduce his sentence, marshalling evidence that the Sentencing Commission and Congress had shifted toward the view that offenders like Goodwin should be sentenced under a far more lenient sentencing scheme. The district court denied Goodwin's motion without a hearing in an order that simply stated Goodwin's unchanged sentencing guidelines range and that the district court had "considered" Goodwin's enumerated arguments.[1] Because our case law requires district courts to provide the reasons for a sentence, I respectfully dissent.

**I.**

Goodwin's sentencing guidelines range is impacted by three calculations: (1) the offense level and criminal history under the U.S. Sentencing Guidelines (USSG); (2) the mandatory minimums in 21 U.S.C § 841, which in turn are driven by the drug quantity and prior drug

―――――――――――

[1]The district court's order reads in full:

Defendant is eligible for a sentence reduction under Section 404 of the First Step Act because the Fair Sentencing Act reduced the statutory penalties for his crack cocaine offense. Defendant has not previously benefited from the Fair Sentencing Act's reduced penalties, and the Court has not previously considered a Section 404 motion by Defendant and denied it on the merits.

However, the Court does not find that a sentence reduction is warranted. Had the Fair Sentencing Act been in effect when Defendant was originally sentenced, his career offender guideline range of 262 to 327 months' imprisonment would have remained unchanged. Also, Defendant has already been sentenced to the low end of his guideline range.

In reaching its decision, the Court has reviewed Defendant's evidence of rehabilitation. The Court has also considered the effect that *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) and Section 401 of the First Step Act would have had on Defendant's sentence, had those changes in the law been in effect at the time of his sentencing.

After carefully considering the parties' arguments and the factors under 18 U.S.C. § 3553(a), the Court concludes that Defendant's original sentence is sufficient but not greater than necessary.

R.93, PID 624.

offenses; and (3) the USSG's career-offender offense level and criminal history category. The highest of those three calculations is the starting point for his sentence. Goodwin would face much lower ranges under all three of those calculations if he were sentenced today.

At Goodwin's original sentencing, the district court determined he had a criminal-history score of 10, putting him in criminal-history category V. The 71.9 grams of crack involved established a base offense level of 30. The resulting sentencing guidelines range was 120 to 150 months; however, that range was increased based on 21 U.S.C. § 841's statutory minimum and U.S.S.G. § 4B1.1's career-offender guideline. Because Goodwin's offense involved more than 50 grams of cocaine base, he was subject to a mandatory minimum of at least 10 years. *See* 21 U.S.C. § 841(b)(1)(A) (2006). And because he had convictions that qualified as "felony drug offenses,"—he had been convicted of two Tennessee drug felonies for which he served 11 months and 29 days—Goodwin's mandatory minimum sentence was 20 years. *See id.*

Goodwin was also deemed a career offender under U.S.S.G. § 4B1.1 because of the two prior felony convictions. Under § 4B1.1, a defendant's base offense level is tied to the statutory maximum for the crime of conviction. Because Goodwin's offense carried a maximum sentence of life under § 841, his base offense level was 37, not 30 as it otherwise would have been. And the same provision increases a career offender's criminal-history category to VI. With the three-level reduction for acceptance of responsibility, Goodwin thus had an adjusted guidelines range of 262 to 327 months. His 262-month sentence fell at the bottom of the guidelines range.

Just a year after Goodwin was sentenced, Congress enacted the Fair Sentencing Act of 2010. The Fair Sentencing Act modified the 100:1 powder-to-crack cocaine ratio to correct the "harsh disparities" in sentencing. *Concepcion v. United States*, 597 U.S. 481, 488–89 (2022). It increased the amount of crack cocaine necessary to trigger the mandatory minimums found in § 841(b)(1)(A)—the provision that had applied to Goodwin—from 50 grams to 280 grams. But these changes did not apply retroactively. Had they applied retroactively, Goodwin's mandatory minimum for 71.9 grams of crack cocaine would have been only ten years.

Relatedly, the Sentencing Guidelines were adjusted to take into account the powder-to-crack disparities as well. They incorporated the Fair Sentencing Act's new ratio, under which Goodwin's starting base offense level (putting aside the career-offender enhancement) would

have been 24, not 30 as it was at the time of his sentencing, with a guidelines range of 70–87 months.

The First Step Act of 2018 made two relevant changes to the operation of § 841. First, it made the Fair Sentencing Act's changes to the powder-to-crack ratio retroactive. Under Section 404 of the First Step Act, district courts are empowered to "impose a reduced sentence" for qualifying defendants "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. 115–391, § 404(b), 132 Stat. 5222. Second, Section 401 of the First Step Act replaced "felony drug offense" in § 841 with "serious drug felony." Pub. L. 115–391, § 401(a)(2), 132 Stat 5194. Goodwin's mandatory minimum under § 841 had been increased from 10 years to 20 years based on prior "felony drug offenses." But his Tennessee convictions that qualified as "felony drug offenses" do not qualify as "serious drug offenses." A "serious drug offense" is one for which the defendant "served a term of imprisonment of more than 12 months," 21 U.S.C. § 802(57), but Goodwin was released after 11 months and 29 days. This change, in combination with the powder-to-crack ratio adjustment, meant Goodwin's statutory range under § 841 would be five to 40 years if he were sentenced under the new provisions.

The First Step Act did not change the career-offender definition in the USSG. However, the offense level assigned to career offenders depends on the maximum sentence for the crime. When Goodwin was first sentenced, that was life, and the corresponding offense level was 37. Today, his maximum would be forty years, which corresponds to a career-offender score of 34, not 37. Goodwin's guidelines range taking into account the career-offender status would thus be 188 to 235 months if he were sentenced today.

Goodwin's First Step Act motion offered two other data points. First, he pointed to a 2016 Sentencing Commission Report finding that offenders like Goodwin, who are classified as career offenders based solely on drug offenses, reoffend at rates equal to offenders sentenced under the ordinary sentencing guidelines. Second, he provided data that, since 2016, courts generally sentence career offenders like him to below-guidelines sentences.

To be clear, only one change affecting Goodwin's sentencing calculations—the change to the drug quantity driving the mandatory minimums in § 841—was made retroactive by the First Step Act. Nonetheless, the Supreme Court has said that district courts can take into account the other changes that would impact a defendant's sentencing calculations and considerations when considering a motion under the First Step Act. *Concepcion*, 597 U.S. at 500–01. In support of his First Step Act motion, Goodwin argued that these changes to the sentencing scheme show a definite shift in how courts, Congress, and the Sentencing Commission consider crack cocaine and the criminal history of offenders like Goodwin that warrants a reduced sentence.

## II.

When resentencing under the First Step Act, a district court first recalculates the defendant's guidelines range making changes based only on the retroactive provisions of the Fair Sentencing Act. The district court here correctly determined that Goodwin's guidelines were unchanged because the retroactive change to the powder-to-crack ratio did not impact his career-offender status under § 4B1.1, which trumped the new mandatory minimum of 10 years and provided the guidelines range of 262 to 327 months.

A resentencing court next considers the proper sentence under § 3553(a). Under *Concepcion*, district courts at this second step may "consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." 597 U.S. at 500. And when resentencing under the First Step Act, "district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *Id.*

Absent legal error in calculating sentencing guidelines, appellate review of a defendant's sentence "should not be overly searching." *Concepcion*, 597 U.S. at 501. But it takes only a brief glance to see that the district court's order here falls short of what is required. There was no hearing on Goodwin's motion, so all we have is the court's brief statement denying the motion for a reduced sentence. In response to Goodwin's detailed statutory arguments, the district court said only that it had "considered the effect that *United States v. Havis*, 927 F.3d 382

(6th Cir. 2019)[2] and Section 401 of the First Step Act would have had on Defendant's sentence, had those changes in the law been in effect at the time of his sentencing." R.93, PID 624. This explanation fails to meet even our highly deferential standard because although it acknowledges Goodwin's arguments, it is completely silent on the court's reasons for rejecting them.

When defendants raise nonfrivolous, "specific and complex" arguments, as Goodwin did here, the district court must address them. *United States v. Thomas-Mathews*, 81 F.4th 530, 544 (6th Cir. 2023) (quoting *United States v. Robertson*, 309 F. App'x 918, 924 (6th Cir. 2009)); *cf. United States v. Duane*, 533 F.3d 441, 451 (6th Cir. 2008) ("A lengthy explanation may be particularly unnecessary where a defendant's arguments are straightforward and conceptually simple." (cleaned up and citation omitted)). Accordingly, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). That requirement "assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable." *Id.*

The district court here was faced with specific arguments related to the changes in the sentencing scheme and why the bases for Goodwin's original sentence were undermined by evolving sentencing guidelines, congressional judgment, and recent sentencing data. The court acknowledged these arguments, just barely, but failed to address them. Instead, the district court stated only that it had "considered" Goodwin's arguments. But that provides no assurance that the district court understood their complexity; nor does it provide insight into how the court weighed them or why it chose to discount them. *Cf. United States v. Wallace*, 597 F.3d 794, 806 (6th Cir. 2010) ("[No case] indicates that this Court should affirm a sentence when no part of the record makes clear that the district judge even understood Defendant's argument.").

The district court did not acknowledge two specific points Goodwin raised: the 2016 Sentencing Commission Report and data that, since 2016, courts generally sentence career

---

[2]*United States v. Havis* held that USSG § 4B1.2(b) did not cover attempt crimes. Because Goodwin pleaded to a conspiracy crime, he argued in his First Step Act motion that *Havis* also warranted a sentence reduction. The district court gave this argument the same cursory treatment as the First Step Act arguments, but Goodwin does not pursue this specific claim on appeal.

offenders like him to below-guidelines sentences. Goodwin raised these as points in his broader argument that the sentencing landscape, and the views of courts, Congress, and the Sentencing Commission, have changed since he was originally sentenced. And although the failure to acknowledge these points is not necessarily reversable error by itself, *see United States v. Michael*, 836 F. App'x 408, 413 (6th Cir. 2013), it underscores the absence of any indication that the district court understood and considered Goodwin's specific arguments.

To be sure, a district court need not comprehensively address every argument raised by the defendant, and in fact, an explicit acknowledgment is not always required. For example, we have said that "a district court's failure to address each argument of the defendant head-on will not lead to automatic vacatur if the context and the record make the court's reasoning clear." *United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009) (cleaned up and citation omitted). But here, the context and the record provide no further insight into the district court's reasoning and this court is "unable to answer the simple question of why the district judge decided to impose" the sentence that it did. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010).

In its brief order, the district court states the unchanged guidelines range, says it has considered Goodwin's arguments, and concludes that "Defendant's original sentence is sufficient but not greater than necessary." R.93, PID 624. District courts are required to explain the basis for even within-guidelines sentences, and thus establishing that Goodwin's sentence fell within the guidelines did not relieve the court of its burden. This rote order gives no reasons *why* the court believed the guidelines range was appropriate, nor does it evaluate the sentence in light of defendant's nonfrivolous arguments related to the evolving sentencing scheme or offer any other reason for the sentence imposed. So although we require only a "brief statement of reasons," *Concepcion*, 597 U.S. at 501, that statement must actually include reasons—not simply state the guidelines range and mechanically state that the district court considered defendant's arguments.

It is true that "[w]hen considering the adequacy of the district court's explanation for its decision regarding a sentencing modification, we consider the record both for the initial sentence and the modified one." *United States v. Williams*, 972 F.3d 815, 817 (6th Cir. 2020). But the issues Goodwin raised on resentencing were not (and could not have been) raised or addressed in his initial sentencing. Nor does the government rely on the original sentencing proceeding.

Thus, the majority's reliance on *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018) is unavailing. There, the Supreme Court upheld a short resentencing order, in large part because it could rely on "the record of the initial sentencing" to "shed[] light on why the court picked" the sentence it did. *Id.* at 1967. The Court cautioned that "under different facts and a different record, the district court's use of a barebones form order in response to a motion like petitioner's would be inadequate," and noted that the courts of appeals "are well suited to request a more detailed explanation when necessary." *Id.*

The majority's reliance on cases like *Chavez-Meza*, *United States v. Bailey*, and *United States v. Smith* fails to engage with the circumstances of this case. Instead of looking to see whether the present case features "different facts and a different record," the majority cites these cases as controlling precedent, when in fact the circumstances are different in critical ways. For example, in *United States v. Smith*, the defendant "did not raise any specific mitigation arguments or advocate for a below-Guideline sentence" in his First Step Act motion. 958 F.3d 494, 501 (6th Cir. 2020). Given the lack of novel argument, this court affirmed a district court's brief order because it could tell from the original sentencing why the district court imposed the sentence it did. *Id.* at 500–01 (quoting from initial sentencing transcript at length). Not only does Goodwin raise specific, novel arguments here, but the government does not point to any explanation from the initial sentencing to explain the sentence imposed. And in *United States v. Bailey*, the defendant's argument for leniency was based on his rehabilitation efforts. 27 F.4th 1210, 1213 (6th Cir. 2022). His arguments were straightforward and the court demonstrated that it understood them by saying "the Court commends defendant for this incident/discipline-free history and completion of drug education classes." *Id.* at 1216 (Gilman, J., concurring). In addition, the district court there actually addressed the impact of Bailey's arguments on its decision-making and explained the countervailing factors when it weighed "defendant's conduct while incarcerated" with "his categorization as a career offender and the fact that defendant's sentence already reflects a term of imprisonment at the low-end of the guideline range." *Id.* So not only was the court faced with a simple argument that it engaged with, the court provided some analysis through its balancing of factors.[3]

---

[3]I note that Judge Gilman wrote a separate concurrence expressing his "reluctant[ce]" to concur and describing why he believed the case "to be such a close call." *Bailey*, 27 F.4th at 1216 (Gilman, J., concurring).

The majority worries that agreeing with Goodwin would "compel us to impose opinion-writing standards on district courts." But affirming the order here encourages formulaic opinion-writing standards, and tells district courts that by saying it "considered" a defendant's arguments, it has done all it must. Our procedural reasonableness opinions focus on the content of a district court's reasoning, not on the decision's form or length. Because the order here offers no reasoning or discernable basis for the sentence imposed, I respectfully dissent.